UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELECTRONIC FRONTIER
FOUNDATION,

              *Plaintiff,*

      v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

              *Defendant*.

Civil Action No. 19-2578 (TFH)

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

This case involves two Freedom of Information Act ("FOIA") requests submitted by

Plaintiff to Defendant United States Department of Homeland Security ("DHS"), more specifically

to the U.S. Customs and Border Protection ("CBP") and the U.S. Immigration and Customs

Enforcement ("ICE").  Both CBP and ICE undertook appropriate efforts to search for and provide

all reasonably segregable records, and have withheld only information that is properly exempt

from release under 5 U.S.C. §§ 552 (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  As explained herein,

in the attached Statement of Facts, declaration of Fernando Pineiro ("Pineiro Decl."), declaration

of Patrick A. Howard ("Howard Decl."), accompanying exhibits, and ICE's *Vaughn* Index, no

questions of material fact remain, and DHS is entitled to judgment as a matter of law.

**STATEMENT OF FACTS**

Defendant hereby incorporates the Statement of Material Facts Not in Genuine Dispute

and the declarations and exhibits referenced therein, filed contemporaneously with this

Memorandum to support both CBP and ICE's search for, review, and processing of responsive records under the FOIA.

**LEGAL STANDARD**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met its burden, the non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Benjamin v. Dep't of State*, 178 F. Supp. 3d 1, 3 (D.D.C. 2016), *aff'd*, 2017 WL 160801 (D.C. Cir. Jan. 3, 2017) (quoting *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009)). A defendant is entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, that it has conducted an adequate search for responsive records, and that each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure. *See, e.g., Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *See, e.g., McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Santana v. Dep't of Justice*, 828 F. Supp. 2d 204, 208 (D.D.C. 2011); *Allen v. U.S. Secret Serv.*, 335 F. Supp. 2d 95, 97 (D.D.C. 2004).

2

**ARGUMENT**

**I.    CBP AND ICE CONDUCTED REASONABLE AND ADEQUATE SEARCHES FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUESTS**

CBP and ICE conducted reasonable and adequate searches for records responsive to Plaintiff's requests.  Under FOIA, an agency is obligated to conduct a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *see also Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."); *Media Research Ctr. v. Dep't of Justice*, 818 F. Supp. 2d 131, 137 (D.D.C. 2011).  A reasonable search is one that covers those locations where responsive records are likely to be located.  *Oglesby*, 920 F.2d at 68.  To satisfy its obligation, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id.*

Where an agency affidavit attests that a reasonable search was conducted, the agency is entitled to a presumption of good faith. *Defenders of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004).  "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request if responsive documents are likely to be located in a particular place. *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996); *Marks v. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978).  Nor does the FOIA require that an agency search every record system.  *Oglesby*, 920 F.2d at 68.

3

CBP – Search

Based on the records sought by Plaintiff, the CBP FOIA division tasked the following offices to conduct searches:  the Office of Field Operations, the United States Border Patrol, and the Air and Marine Operations.  Howard Decl. at ¶ 17.  These three offices are responsible for exercising CBP's law enforcement authority at the border.  *Id.* at ¶ 18.  Because Plaintiff's request sought records relating to CBP's use of certain law enforcement techniques on vehicles crossing the border, these three offices were deemed the most likely to possess records responsive to Plaintiff's request.  *Id.*

CBP conducted an initial search which included consultations with relevant subject-matter experts and field personnel who, based on their position and experience, were expected to be familiar with any policies, procedures, training materials or manuals relating to the use of GPS tracking devices on vehicles crossing the border.  Howard Decl. at ¶ 19.  This initial search yielded no responsive records.  *Id.*

The Office of Field Operations operates eighteen Field Offices that are responsible for managing ports of entry within their geographic area of responsibility, plus an additional Preclearance Field Office responsible for managing CBP's preclearance locations in foreign countries.  Howard Decl. at ¶ 22.  Given that Plaintiff's request sought records relating to the use of GPS tracking devices on vehicles crossing the border, CBP conducted a supplemental search of the eighteen geographical Field Offices.[2]  *Id.* at ¶ 23.  Each of these Field Office conducted a search for records, including a search of electronic files.  *Id.* at ¶ 24.  This supplemental search

---

[2] CBP did not conduct a search by the Preclearance Field Office because preclearance locations do not generally inspect vehicles crossing the border and, therefore, would not be reasonably expected to have any responsive records.  Howard Decl. at ¶ 23.

identified 49 records.  *Id.* at ¶ 25.  Upon further review 45, of those 49 records, were deemed non-responsive because they did not constitute policies, procedures, training manuals, or training materials regarding the use of GPS tracking devices on vehicles crossing the border.  *Id.* at ¶ 29.

 CBP has provided a detailed description of the search method utilized and the locations searched.  CBP has satisfied its burden of demonstrating that it conducted a "reasonable" and adequate search in response to the request framed by Plaintiff.  *See e.g.  Iturralde v. Comptroller of Currency,* 315 F.3d 311, 315 (D.C. Cir. 2003) ("the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.").     Based on the above, it is clear that CBP "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby,* 920 F.2d at 68.

<u>ICE - Search</u>

Given the records sought by Plaintiff, ICE determined that the office likely to have responsive records would be Homeland Security Investigations ("HSI").  Pineiro Decl. at ¶ 26. ICE explains that HSI's Records and Disclosure Unit FOIA point of contact, a subject matter expert on HSI's activities, determined that two divisions, within HSI, were the most likely to have responsive records: Operational Technology and Cyber Division ("OTCD") and the Policy, Planning and Records Management ("PPRM").  *Id.* at ¶ 27.  A special agent with OTCD conducted a search of the shared drives and network hard drives.  *Id.*  A special agent with PPRM conducted a search of HSI's intranet and HSI's Technical Operations Handbook using the search terms "GPS" and "tracking."  *Id.*  Three documents were located as a result of these searches.  *Id.*  These three documents were withheld in full pursuant to FOIA Exemption 7(E).

ICE explains that the reason it did not find more records responsive to Plaintiff's request is "because HSI does not have policies or procedures regarding the use of GPS tracking devices on vehicles *specifically* crossing the borders or training manuals or training materials on the use of GPS tracking on vehicles *specifically* crossing the border." Pineiro Decl. at ¶ 29. Plaintiff's FOIA request specifically sought records related to vehicles crossing the borders; HSI does not have such records. *Id.*

ICE subsequently tasked the Office of the Principal Legal Advisor ("OPLA") to conduct a comprehensive search. *Id.* at ¶ 31. OPLA conducted searches of shared drives, network hard drives, and email accounts using the search terms "Ignjatov," "GPS," "border," "Jones," "tracker," and "tracking." *Id.* at ¶ 32. Approximately 9000 pages of potentially responsive records were located. *Id.* The responsive records were reviewed, processed and released to Plaintiff on December 30, 2019, March 5, 2020, and July 5, 2020. *Id.* The vast majority of the records located by OPLA were deemed non-responsive, as they related to the use of GPS tracking in general, and not the use of GPS tracking as it relates to vehicles crossing the borders. *Id.* at ¶ 33.

Likewise ICE has provided a detailed description of the search method utilized, the locations searched and the search parameters used. ICE has also satisfied its burden of demonstrating that it conducted a "reasonable" and adequate search in response to the request framed by Plaintiff. *See e.g. Iturralde,* 315 F.3d at 315. Based on the above, it is clear that ICE "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby,* 920 F.2d at 68.

II.     **CBP AND ICE PROPERLY INVOKED FOIA EXEMPTIONS  5, 6, 7(C), AND 7(E)**

FOIA does not allow the public to have unfettered access to government files.  *McCutchen v. Dep't of Health & Human Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994).  Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements. *Dep't of Def. v. Fed. Labor Relations Auth. ("FLRA")*, 510 U.S. 487, 494 (1994).  FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions.  5 U.S.C. § 552(b); *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989).  To protect materials from disclosure, the agency must show that they come within one of the FOIA exemptions.  *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007).

As explained below, and as detailed in CBP and ICE's declarations and ICE's *Vaughn* Index, both CBP and ICE properly relied on FOIA Exemptions 5, 6, 7(C), and 7(E), to withhold records, or portions of records, responsive to Plaintiff's requests.


A.  **FOIA Exemption 5**

FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency … ," *See* 5 U.S.C. § 552(b)(5).  Courts have construed this language to "exempt those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975); *see also FTC v. Grolier Inc.,* 462 U.S. 19, 26 (1983); *Martin v. Office of Special Counsel,* 819 F.2d 1181, 1184 (D.C. Cir. 1987).  In applying

FOIA Exemption 5, CBP and ICE withheld documents under the attorney-client privilege, the attorney work-product privilege, and the deliberative process privilege, as described below.

1. **CBP and ICE Properly Withheld Information Protected by the Attorney-Client Privilege**

CBP and ICE correctly withheld information pursuant to the attorney-client privilege of FOIA Exemption 5. *See Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) (noting that FOIA Exemption 5 "incorporates the privileges that the Government may claim when litigating against a private party, including the governmental attorney-client and attorney work product privileges, the presidential communications privilege, the state secrets privilege, and the deliberative process privilege."). The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977). The attorney-client privilege is not limited to the context of litigation. *See id.* at 252–53. Rather, it "also protects communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'" *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 618 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984)); *see also Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 153–54 (D.D.C. 2012) (discussing attorney-client privilege). A court may infer confidentiality when the communications suggest that "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980).

CBP withheld legal advice that was provided by attorneys from the Office of Chief Counsel to CBP law enforcement personnel and descriptions of those communications; these communications included advice and recommendations regarding development of law

enforcement procedures.   Howard Decl. at ¶¶ 34-35.   Likewise ICE withheld confidential

discussions between two attorneys from the Office of the Principal Legal Advisor ("OPLA")

regarding legal matters which would then be communicated to other agency employees and

provide advice on legal matters.   Pineiro Decl. at ¶ 38; *see also* ICE *Vaughn* Index.   Both CBP and

ICE properly withheld communications between agency attorneys communicating advice,

guidance, or opinions regarding particular legal questions raised by agency employees.   *Judicial*

*Watch v. Dep't of the Army,* 466 F. Supp. 2d 112, 121 (D.D.C. 2006) (Attorney-client privilege

"applies to confidential communications made to an attorney by both high-level agency personnel

and lower-echelon employees.").   The information withheld is clearly the type of information that

the attorney-client privilege of FOIA Exemption 5 was intended to protect because the information

constitutes "confidential communications between an attorney and his client relating to a legal

matter for which the client has sought professional advice." *Mead Data Cent., Inc.*, 566 F.2d at

252; *see also Judicial Watch,* 466 F. Supp. 2d at 121 (Attorney-client privilege "encompasses any

opinions given by an attorney to his client based on, and thus reflecting, those facts as well as

communications between attorneys that reflect client-supplied information.").   Thus, CBP and ICE

are entitled to summary judgement with respect to their withholdings made pursuant to FOIA

Exemption 5 and the attorney-client privilege.

### 2. ICE Properly Withheld Information pursuant to the Attorney Work-Product Privilege

ICE also correctly withheld information pursuant to the attorney work-product privilege of

FOIA Exemption 5, which protects documents and other memoranda prepared by an attorney in

contemplation of litigation.  *See, e.g., Judicial Watch v. Dep't of Justice*, 432 F.3d 366, 369 (D.C.

Cir. 2005).   Moreover, because the work product doctrine does not distinguish between factual and

deliberative material, "factual material is itself privileged when it appears within documents that

9

are attorney work product." *Id.* at 371.  Thus, "[i]f a document is fully protected as work product, then segregability is not required." *Id.*

Under the attorney work-product, ICE withheld information contained in documents prepared by OPLA attorneys pertaining to a case summary of an ongoing litigation; training material regarding matters anticipating future litigation; and matters related to recent decisions and contemplating future litigation.  Pineiro Decl. ¶ 38; *see also* ICE *Vaughn* Index.  This type of information falls squarely within the attorney work-product privilege of FOIA Exemption 5.  *See e.g. Sorin v. U.S. Dep't of Justice,* 758 Fed. Appx. 28, 32 (2nd Cir. 2018) (holding that emails concerning legal theories and litigation strategies and attorney notes "fall within the work-product privilege as communications within and among law enforcement agencies created in anticipation of a criminal prosecution and for the purpose of furthering that prosecution"); *Media Research Ctr. v. U.S. Dep't of Justice,* 818 F. Supp. 2d 131, 141 (D.D.C. 2011) ("[W]hen government attorneys act as 'legal advisors' to an agency considering litigation that may arise from challenge to a government program, a specific claim is not required to justify the assertion of [the attorney work-product] privilege").  Accordingly, ICE is entitled to summary judgment with respect to its withholdings made pursuant to the attorney work-product privilege.

### 3.  ICE and CBP Properly Withheld Information Pursuant to the Deliberative Process Privilege.

ICE withheld pursuant to the deliberative process privilege draft documents, such as draft training documents and information pertaining to legal advice and guidance.  Pineiro Decl. at ¶ 39; *see also* ICE *Vaughn* Index.  CBP also withheld, pursuant to the deliberative process privilege, information regarding advice and recommendations to agency decision makers and advice regarding the establishment of an appropriate decision-making process for the development of law enforcement procedures.  Howard Decl. at ¶ 34.  FOIA Exemption 5 not only shields documents

10

of the type that would be privileged in the civil discovery context, but also includes the executive

deliberative process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see*

*Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Rockwell Int'l*

*Corp. v. Dep't of Justice*, 235 F.3d 598, 601 (D.C. Cir. 2001).

Documents exempt from disclosure pursuant to Exemption 5, deliberative process

privilege, include those "'reflecting advisory opinions, recommendations and deliberations

comprising part of a process by which governmental decisions and policies are formulated.'"

*Sears, Roebuck & Co.*, 421 U.S. at 150 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40

F.R.D. 318, 324 (D.D.C. 1966)); *see McKinley v. FDIC,* 744 F. Supp. 2d 128, 137-38 (D.D.C.

2010).  As the U.S. Supreme Court has explained:

> The deliberative process privilege rests on the obvious realization that officials will not
> communicate candidly among themselves if each remark is a potential item of discovery
> and front page news, and its object is to enhance the quality of agency decisions by
> protecting open and frank discussion among those who make them within the Government.

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (internal

quotation marks and citations omitted).  Examples of documents covered by the deliberative

process privilege include recommendations, draft documents, proposals, suggestions, advisory

opinions, and other documents, such as email messages, that provide the views of the author, rather

than the official policy of the agency, or which reflect the give and take of the policy-making

process. *See Bloomberg, L.P. v. SEC*, 357 F. Supp. 2d 156, 168 (D.D.C. 2004).

To invoke the deliberative process privilege, an agency must show that the exempt

document is both pre-decisional and deliberative. *Access Reports v. Dep't of Justice*, 926 F.2d

1192, 1194 (D.C. Cir. 1991); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868

(D.C. Cir. 1980).  For a document to be pre-decisional, it must be antecedent to the adoption of an

agency policy.  *See Jordan v. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc); *see also In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) ("The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made[.]").  To show that a document is pre-decisional, however, the agency need not identify a specific final agency decision; it is sufficient to establish "'what deliberative process is involved, and the role played by the documents at issue in the course of that process.'"  *Heggestad v. Dep't of Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas*, 617 F.2d at 868); *see Gold Anti-Trust Action Comm. v. Bd. of Governors*, 762 F. Supp. 2d 123, 135-36 (D.D.C. 2011) ("[E]ven if an internal discussion does not lead to adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process.") (citing *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992)).

ICE describes the information withheld pursuant to the deliberative process privilege as containing internal discussions between agency employees with respect to draft documents that do not contain final agency decisions.  *See* ICE *Vaughn* Index.  The information withheld contains options being considered, and recommendations.  *Id.*   Some of these documents contain edits, recommended changes and feedback.  *Id.*  This information is both deliberative and pre-decisional.

Furthermore, ICE explains that disclosure of the withheld information would lead to a chilling effect on the agency's ability to have open and frank discussions among its staff.  Pineiro Decl. at ¶ 39.  Moreover, ICE notes that if draft information regarding agency policies and enforcement actions were released, this could lead to confusion as to ICE's mission and enforcement activities.  *Id.* Thus, ICE has demonstrated a foreseeable harm. 5 U.S.C.

§ 552(a)(8)(A)(i)(I); *see also Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020)

("Such chilling of candid advice is exactly what the privilege seeks to prevent.")

CBP explains that the information withheld under the deliberative process privilege

includes deliberative information compiled in advance of a final agency decision, including advice

and recommendations to agency decision makers, and advice regarding the establishment of an

appropriate decision-making process for the development of law enforcement procedures. Howard

Decl. at ¶ 34.

Based on the above, ICE and CBP correctly withheld the above information pursuant to

the deliberative process privilege of FOIA Exemption 5.

### B. The Records at Issue Have Been Compiled For Law Enforcement Purposes

To establish the applicability of any of the subparts of FOIA Exemption7, the government

must first show that the records were "compiled for law enforcement purposes."  5 U.S.C. §

552(b)(7).  Investigative documents qualify as records "compiled for law enforcement purposes"

if the agency's declaration establishes (1) "a rational nexus between the investigation and one of

the agency's law enforcement duties;" and (2) "a connection between and individual or incident

and a possible security risk or violation of federal law." *Ctr. For Nat'l Sec. Studies v. U.S. Dep't

of Justice,* 331 F.3d 918, 926 (D.C. Cir. 2003) (internal quotation marks omitted).  Further, where,

as here "the agency's principal function is law enforcement, courts are "'more deferential'" to the

agency's claimed purpose for the particular records." *Pub. Employees for Envtl. Responsibility v.

U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico,* 740 F.3d 195, 203 (D.C. Cir. 2014)

(quoting *Tax Analyst v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002); *see also Pratt v. Webster,* 673 F.2d

408, 418 & n.25 (D.C. Cir. 1982) ("[L]ess exacting proof" of a legitimate law enforcement purpose

is required of law enforcement agencies").

Both CBP and ICE satisfy the threshold requirement of FOIA Exemption 7.  CBP indicates that the record at issue was compiled for law enforcement purposes in that the information was created and used by CBP in its law enforcement mission to secure the U.S. border and enforce federal law at the U.S. ports of entry.  Howard Decl. at ¶ 38.  ICE is the largest investigative arm of DHS, and is responsible, among other duties, for identifying and eliminating vulnerabilities within the nation's borders.  Pineiro Decl. at ¶ 41.  ICE states that the records at issue pertain to investigations conducted pursuant to DHS's law enforcement authorities.  *Id.*

### 1.  FOIA Exemptions 6 and 7(C)

Pursuant to FOIA Exemptions 6 and 7(C), CBP withheld the names, email addresses, and phone numbers of CBP employees.  Howard Decl. at ¶ 40. Similarly ICE indicated, throughout its *Vaughn* Index, that it withheld the following information:  names, signatures, phone numbers, addresses and email addresses.  Pineiro Decl. at ¶ 45; *see also* ICE *Vaughn* Index – Bates page numbers: 2019-ICLI-00060 1-938.[3]

FOIA Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  The Supreme Court has adopted a broad construction of the privacy interests protected by Exemption 6, emphasizing that "privacy encompass[es] the individual's control of information concerning his or her person."  *DOJ v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 764 n. 16 (1989) (citation omitted).  Exemption 6 requires an agency to balance the individual's right to privacy against the public's interest in disclosure.  *Dep't of Air Force v. Rose*,

---

[3] Plaintiff indicated that it agreed not to challenge FOIA Exemptions 6 and 7(C) withholding of names, phone numbers, addresses and email addresses so long as individuals are identifiable by position.  *See* Dkt. No. 14.

425 U.S. 352, 372 (1976). An agency must determine whether disclosure of information threatens a protectable privacy interest and if so, the agency must weigh that privacy interest against the public interest in disclosure, if any. *See Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991). The "only relevant public interest … to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contribut[ing] significantly to the public understanding of the operations or activities of the government." *Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994).

Likewise FOIA Exemption 7(C) protects "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "Exemption 7(C) … is 'somewhat broader' than Exemption 6, which requires proof of a 'clearly unwarranted invasion of personal privacy.'" *Roth v. DOJ,* 642 F.3d 1161, 1173 (D.C. Cir. 2011) (quoting *DOJ v. Reporters Comm. for Freedom of the Press*). Where the information in question was compiled for law enforcement purposes, courts "have no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Id.* However under both Exemptions 6 and 7(C), the agency must engage in a balancing test to determine whether the public interest in disclosure is outweighed by a significant private interest in non-disclosure. *See Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review,* 830 F.3d 667, 673-74 (D.C. Cir. 2016).

Both CBP and ICE explain that law enforcement personnel, such as federal agents and immigration officers, have a privacy interest in not having their names and contact information released in order to remain free from harassment and retaliation, and not become targets of individuals who may begrudge them. Howard Decl. at ¶ 40; Pineiro Decl. at ¶¶ 47-50. *See e.g.*

15

*Bernegger v. EOUSA*, 334 F. Supp. 3d 74, 89 (D.D.C. 2018) (finding names, addresses, and telephone numbers of AUSAs, legal assistants, law enforcement officers properly withholdable as "there is reason to believe" plaintiff will harass or retaliate against those individuals – FOIA Exemption 6 and 7(C)); *Michael v. Dep't of Justice,* Civ. A. No. 17-0197 (ABJ), 2018 WL 4637358, \*11 (D.D.C. Sept. 27, 2018) ("disclosure of personal information of law enforcement personnel may hinder the ability to conduct ongoing investigations, may lead to unwarranted harassment, and may otherwise cause embarrassment" constituting an invasion of privacy).

It is also clear that the release of such information would not significantly contribute to the public's understanding of how CBP, ICE, or the Department of Homeland Security as a whole, carry out their statutory duties. Howard Decl. at ¶ 40; Pineiro Decl. at ¶ 51; *see also McGehee v. DOJ,* 800 F. Supp. 2d 220, 234 (D.D.C. 2011) ("[T]he relevant question is not whether the public would like to know the names of FBI agents and victims involved, but whether knowing those names would shed light on the FBI's performance of its statutory duties.")

Accordingly, as there is no significant public interest in the information described above, it is clear that both CBP and ICE correctly applied FOIA Exemptions 6 and 7(C) to withhold names, signatures, phone numbers, addresses and email addresses.

### 2. FOIA Exemption 7(E)

Pursuant to FOIA Exemption 7(E), CBP withheld internal guidelines for the use of specific law enforcement techniques; information regarding the circumstances in which such techniques may be utilized and limitations on the use of such techniques.  Howard Decl. at ¶ 43. ICE withheld information under FOIA Exemption 7(E) pertaining to Fourth Amendment training material; techniques and procedures related to prosecutions; internal website URLs; techniques and procedures related to electronic surveillance; techniques and procedures related to GPS

trackers in the maritime environment; technical operations handbook for special agents and other law enforcement officers. *See* ICE *Vaughn* Index.[4]

Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting the "relatively low bar for the agency to justify withholding" information under Exemption 7(E)).

In this Circuit, "'the exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.'" *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)). In fact, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Id.* (quoting *Mayer Brown*, 562 F.3d at 1194) (internal quotation marks and alterations omitted).

CBP explains that disclosure of the information that it withheld pursuant to FOIA Exemption 7(E) would risk circumvention of the law because it would reveal specific law

---

[4] This information can be found on Bates Page Numbers: 2019-ICLI-00060: 056-109; 117-118; 120-415; 418-420; 489-569; 580-582; 605-655; 657-735; 771-780; 856-864; 916-929; 939-941; and 945-953.

enforcement capabilities and provide information regarding the relative likelihood of CBP utilizing particular techniques in certain circumstances or in specific locations.  Howard Decl. at ¶ 44.  Such information could be used to develop countermeasures, avoid detection, and frustrate CBP's ability to detect illicit activity and enforce the law.  *Id.*  Furthermore, information regarding procedures utilized in particular geographic locations and the use of certain investigative techniques at those locations may lead illicit actors to target locations where they may face a decreased risk of detection (a practice known as "port shopping").  *Id.* at ¶ 45.  Likewise ICE states that disclosing the information withheld pursuant to FOIA Exemption 7(E) could reasonably be expected to circumvent the law.  Pineiro Decl. at ¶ 53.  ICE also states in its *Vaughn* entries that the information withheld under FOIA Exemption 7(E) relates to law enforcement techniques and procedures that are not commonly known.  *See* ICE *Vaughn* Index.  ICE further explains that releasing this information could risk circumvention of the law by individuals taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. Pineiro Decl. at ¶ 54.

FOIA Exemption 7(E) has been deemed appropriate with respect to similar types of information withheld by CBP and ICE where release of such information could create a risk of circumvention.  *See e.g. Techserve Alliance v. Napolitano,* 803 F. Supp. 2d 16, 28-29 (D.D.C. 2011) (noting D.C. Circuit precedent "that an agency may withhold information from disclosure where releasing such information would provide insight into its investigatory or procedural techniques."); *Abdelfattah v. U.S. Immigration & Customs Enforcement,* 851 F. Supp. 2d 141, 145 (D.D.C. 2012) (investigative notes and internal instructions properly withheld under Exemption 7(E)); *see also Parker v. U.S. Immigration & Customs Enforcement*, 238 F. Supp. 3d 89, 100 (D.D.C. 2017) (disclosing law enforcement system URLs, internal website links could reasonably

be expected to create a risk of circumvention).  Because there is a risk of circumvention of the law in releasing this information, CBP and ICE correctly applied FOIA Exemption 7(E).

### III.   ALL REASONABLY SEGREGABLE PORTIONS OF THE RESPONSIVE RECORDS HAVE BEEN RELEASED.

Under FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b).  Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions."  *Mead Data Cent., Inc. v. Dep't of Air Force,* 566 F.2d 242, 260 (D.C. Cir. 1977).  To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated.  *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester.  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

In this case, CBP and ICE both evaluated the records to determine where non-exempt information could be segregated from exempt information, and disclosed the non-exempt information from the records where feasible.  Howard Decl at ¶ 46; Pineiro Decl. at ¶¶ 55-57. Furthermore, the fact that ICE provided a supplemental release of information on September 30, 2020, is further evidence of ICE's in-depth segregability review.  *Id.* at ¶ 17.  Both CBP and ICE's declarations, and ICE's *Vaughn* Index, demonstrate throughout, with reasonable specificity, that all documents reviewed were processed to identify and produce any reasonably segregable

material consistent with the FOIA provisions.  Therefore, the Court should find that CBP and ICE

have properly complied with the duty to segregate exempt from non-exempt information.

*   *   *

**CONCLUSION**

For the reasons set forth above, DHS respectfully requests that this Court grant summary

judgment in its favor as to all claims.

Dated:  November 13, 2020                          Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

Daniel F. Van Horn
Chief, Civil Division
D.C. Bar #924092

By:  /s/ *Kathleene Molen*
KATHLEENE MOLEN
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: (202) 803-1572
Kathleene.Molen@usdoj.gov

*Counsel for Defendant*