## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

Electronic Frontier Foundation
    Plaintiff,

v.

Department of Homeland
Security,
    Defendant.

_____

)
)
)
)
)
)
)
)
)
)

Civil Action No. 1:19-cv-02578

## DECLARATION OF FERNANDO PINEIRO IN SUPPORT OF THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY'S MOTION FOR SUMMARY JUDGMENT

### I.   INTRODUCTION

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am the Acting FOIA Officer of the Freedom of Information Act Office (the "ICE FOIA Office") at U.S. Immigration and Customs Enforcement ("ICE"). The ICE FOIA Office is responsible for processing and responding to all Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. I have held this position since July 10, 2019 and I am the ICE official immediately responsible for supervising ICE responses to requests for records under the FOIA, 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a (the "Privacy Act"), and other applicable records access statutes and regulations. Prior to this position, I was the Deputy FOIA Officer of the ICE FOIA Office from December 29, 2013 to July 9, 2019, and prior to that I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of Homeland Security ("DHS").

2.      My official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office, which is responsible for the receipt, processing, and response to all FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at

ICE.  In that capacity, I manage and supervise a staff of ICE FOIA Paralegal Specialists, who report to me regarding the processing of FOIA and Privacy Act requests received by ICE. Due to my experience and the nature of my official duties, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act.

      3.      I make this declaration in support of ICE's Motion for Summary Judgment in the above-captioned action. The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

      4.      This declaration provides a description of the process upon which ICE received Plaintiff's FOIA request, the process upon which ICE searched for and processed records located in response to Plaintiff's FOIA request, and the process upon which ICE disclosed records located in response to Plaintiff's FOIA request.

      5.      Additionally, in accordance with the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration also provides an explanation of the basis for withholding, in part, portions of 953 pages pursuant to FOIA Exemptions (b)(5) and (b)(7)(E).[1] **A true and complete copy of the *Vaughn* index is attached to this declaration as Exhibit 1.**

## II.    PROCEDURAL HISTORY OF THE PLAINTIFF'S FOIA REQUEST AND THE INSTANT LITIGATION

      6.      In a letter dated November 5, 2018, that ICE received on November 5, 2018, Plaintiff submitted a six-page FOIA request seeking any and all records created or received by

---

[1] In the Proposed Briefing Schedule filed by the Parties on August 5, 2020, Document 14, Plaintiff agreed not to challenge the withholding of names, phone numbers, addresses, and e-mail addresses made pursuant to FOIA Exemption 6 and 7(C), so long as individuals are identifiable by position. ICE believes that all withholdings under FOIA Exemptions 6 and 7(C) can be identified by position, however, to the extent that any information withheld under FOIA Exemptions 6 and 7(C) cannot be identified by position, ICE has included information in this declaration and in the *Vaughn* Index, regarding all information withheld under FOIA Exemptions 6 and 7(C), regardless of whether the individuals are identifiable by position.

Homeland Security Investigations ("HSI") or U.S. Customs and Border Protection ("CBP") between January 3, 2012 and the date of the request. **A true and complete copy of Plaintiff's FOIA request is attached to this declaration as Exhibit 2.** Plaintiff's FOIA request sought the following:

1.  Policies and/or procedures regarding the use of GPS tracking devices on vehicles crossing the borders
2.  Training manuals and/or training materials on the use of GPS tracking on vehicles crossing the border.

7.      In a letter to the plaintiff dated November 15, 2018, the ICE FOIA Office acknowledged the receipt of the FOIA request, assigned it FOIA case number 2019-ICFO-21210, and determined that portions of the information were under the purview of the CBP. In that acknowledgement letter, ICE advised Plaintiff that the FOIA request was also being referred to CBP for processing and direct response. **A true and complete copy of the November 15, 2018 letter is attached as Exhibit 3.**

8.      In a letter to the plaintiff dated March 11, 2019, the ICE FOIA Office issued a final response letter to Plaintiff. The letter stated that "[a] search of the ICE Homeland Security Investigations (HSI) for records responsive to your request produced 3 pages that are responsive to your request. After review of those documents, I have determined that 3 pages will be withheld in their entirety pursuant to Exemption 7(E) of the FOIA."[2] **A true and complete copy of the March 11, 2019 letter is attached as Exhibit 4.**

9.      In a letter dated April 18, 2019, that ICE received on April 26, 2019, Plaintiff submitted an administrative appeal to the ICE Office of the Principal Legal Advisor ("OPLA").

---

[2] The letter incorrectly stated that three ***pages*** were found and withheld. The letter should have said three ***documents*** were found and withheld. The three documents totaled fifteen pages.

The appeal was assigned case number 2019-ICAP-00338 for tracking purposes. **A true and complete copy of the April 18, 2019 letter is attached as Exhibit 5.**

10.     In a letter dated May 24, 2019, OPLA responded to Plaintiff's appeal.  Upon review of the administrative record, OPLA concluded that the search was reasonably calculated to uncover all relevant documents and the withholdings were proper in all respects. Therefore, ICE affirmed the adequacy of the search and the application of the withholdings.  **A true and complete copy of the May 24, 2019 letter is attached as Exhibit 6.**

11.     On August 27, 2019, Plaintiff filed a complaint in the United States District Court for the District of Columbia for declaratory, injunctive, and other appropriate relief.

12.     On December 30, 2019, the ICE FOIA Office reviewed 521 pages of potentially responsive records and determined that only 483 of the pages were responsive to Plaintiff's FOIA request and released those pages to Plaintiff. These pages were bates stamped 2019-ICLI-00060 1 - 2019-ICLI-00060 483. **A true and complete copy of the December 30, 2019 letter is attached as Exhibit 7.**

13.     On March 5, 2020, the ICE FOIA Office reviewed 1,091 pages of potentially responsive records and determined that only 94 of the pages were responsive to Plaintiff's FOIA request and released those pages to Plaintiff. These pages were bates stamped 2019-ICLI-00060 484 - 2019-ICLI-00060 577.  **A true and complete copy of the March 5, 2020 letter is attached as Exhibit 8.**

14.     On May 5, 2020, the ICE FOIA Office reviewed 577 pages of potentially responsive records and determined that none of the pages were responsive to Plaintiff's FOIA request. **A true and complete copy of the May 5, 2020 letter is attached as Exhibit 9.**

15.     During the month of June 2020, ICE conducted a responsiveness review of the approximately 6,000 pages of records located by the Office of the Principal Legal Advisor during its search. ICE determined that approximately 576 pages of the 6,000 pages may contain records responsive to Plaintiff's FOIA request, and ICE would process those pages for final production in July, 2020.

16.     On July 5, 2020, the ICE FOIA Office reviewed the remaining 576 pages of potentially responsive records and determined that only 361 of the pages were responsive to Plaintiff's FOIA request and provided those pages to Plaintiff. These pages were bates stamped 2019-ICLI-00060 578 - 2019-ICLI-00060 938.  **A true and complete copy of the July 5, 2020 letter is attached as Exhibit 10.**

17.     On September 30, 2020, the ICE FOIA Office made a supplemental production which consisted of 117 re-processed pages on which various withholdings were lifted and additional information disclosed. The bates stamped page numbers for the first 102 pages that were reprocessed were: 2019-ICLI-00060 54, 56-109, 120, 170-171, 367-369, 416-420, 422-435, 540, 556-563, 569, 832, and 885-895. In addition, the supplemental production contained a reprocessing of the fifteen pages that were withheld in full at the administrative level. These fifteen pages were bates stamped 2019-ICLI-00060 939 - 2019-ICLI-00060 953. **A true and complete copy of the September 30, 2020 letter is attached as Exhibit 11.**

18.     On March 7, 2020, U.S. Customs and Border Protection ("CBP") located records that were potentially responsive to the FOIA request and referred 4 pages of potentially responsive records to ICE for processing. ICE reviewed the 4 pages of potentially responsive records and determined that, of the 4 pages, that only 2 pages were responsive. ICE also determined that the 2 remaining responsive pages were duplicates of each other. On October 26,

2020, ICE processed and released the remaining 1 page of responsive records, and the document was Bates numbered 2019-ICLI-00060 954. **A true and complete copy of the October 26, 2020 letter is attached as Exhibit 12.**

## III.   INFORMATION REGARDING ICE'S  STANDARD  PROCEDURE FOR INITIATING SEARCHES IN RESPONSE  TO FOIA  REQUESTS AND ADDITIONAL SEARCHES CONDUCTED   DURING LITIGATION

19.     Each program office within ICE has a designated  point of contact ("POC") who is the primary person responsible for communications between that program office and the ICE FOIA Office. Each POC is a person with detailed knowledge about the operations of their particular program office. When the ICE FOIA Office receives a FOIA request, its first step is to identify which program offices, based on their experience and knowledge of ICE's program offices, within ICE are reasonably likely to possess records responsive to that request if any and to initiate searches within those program offices. Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the POCs within each of those program offices with a copy of the FOIA request and instructs them to conduct a search for responsive records. The POCs then review the FOIA request along with any case-specific instructions that may have been provided, and based on their experience and knowledge of their program office practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any. Per the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files, which in their judgment, based on their knowledge of the manner in which they routinely keep records, would most likely be the files to contain responsive documents. Once those searches are completed, the individuals and

component offices provide any potentially responsive records to their program office's POC, who in turn provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness.

20.     ICE employees maintain records in several ways. ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records. ICE employees may store electronic records on their individual computer hard drives, their program office's shared drive (if the office uses one), DVDs, CDs, or USB storage devices. The determination of whether or not these electronic locations need to be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which the employee maintains his/her files.

21.     Additionally, all ICE employees have access to email. ICE uses the Microsoft Outlook email system. Each ICE employee stores their files in the way that works best for that particular employee. ICE employees use various methods to store their Microsoft Outlook email files: some archive their files monthly, without separating by subject; others archive their email by topic or by program; still others may create PST files of their emails and store them on their hard drive or shared drive.

22.     Individual employees archive their own emails according to their individual work-related needs. Individual archives of emails are searched by the individual employees where those employees have identified individual archives containing potentially responsive documents.

IV.    **DESCRIPTION OF PROGRAM OFFICES TASKED WITH SEARCHING FOR RECORDS IN RESPONSE TO THE PLAINTIFF'S FOIA REQUEST**

23.     ICE is the principal investigative arm of DHS and the second largest investigative agency in the Federal government. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now has more than 20,000 employees and offices in all 50 states and 48 foreign countries.

24.     ICE HSI is responsible for investigating a wide range of domestic and international activities arising from the illegal movement of people and goods into, within and out of the United States.  HSI uses its legal authority to investigate criminal activities such as immigration crime, human rights violations and human smuggling; smuggling of narcotics, weapons and other types of contraband; and financial crimes, cybercrime and export enforcement issues.  In addition to ICE criminal investigations, HSI oversees the agency's international affairs operations and intelligence functions.

25.     The Office of the Principal Legal Advisor ("OPLA") is the largest legal program in DHS, with over 1,100 attorneys and 350 support personnel. By statute, OPLA serves as the exclusive representative of DHS in immigration removal proceedings before the Executive Office for Immigration Review, litigating all removal cases including those against criminal aliens, terrorists, and human rights abusers. OPLA also provides a full range of legal services to ICE programs and offices. OPLA provides legal advice and prudential counsel to ICE personnel on their customs, criminal, and immigration law enforcement authorities, the Freedom of Information Act and Privacy Act, ethics, legal liability under the Federal Tort Claims Act, and a range of administrative law issues, such as contract, fiscal, and employment law. OPLA represents the agency before the Merit Systems Protection Board, the Equal Employment Opportunity Commission, and the Board of Contract Appeals. OPLA attorneys provide essential

support to the Department of Justice in the prosecution of ICE cases and in the defense of ICE's

authorities in federal court.

## V.    PROGRAM OFFICE SEARCHES AND RESPONSES TO PLAINTIFF'S FOIA REQUEST

26.    Upon receipt of the FOIA Request, the ICE FOIA Office determined that because

of the subject matter of the FOIA request, there was one (1) ICE office likely to have records

responsive to Plaintiff's request: HSI. The ICE FOIA Office tasked HSI on November 15, 2018,

to conduct a comprehensive search for records and to provide all records located during that

search to the ICE FOIA Office for review and processing.

27.    In response to the FOIA tasking, the HSI Records and Disclosure Unit ("RDU")

FOIA POC reviewed the substance of the FOIA request, and relying upon her subject matter

expertise and knowledge of HSI's activities, determined that the Operational Technology and

Cyber Division ("OTCD") and the Policy, Planning and Records Management ("PPRM")

Division should be tasked to conduct a search for responsive documents. HSI's Operational

Technology and Cyber Division supports ICE and the Department of Homeland Security by

improving methods for managing different types of information and operational technology, and

directing how these tools are shared with other agencies and organizations. Programs and

projects under the OTCD focus on merging methods and technology that result in better law

enforcement operations. It directly supports HSI's law enforcement and mission support

programs and helps develop major advancements in technology used to combat crime. The

Policy, Planning and Records Management Division has a diverse portfolio in support of HSI.

This includes developing and maintaining all HSI policies, coordination, delegation orders, and

Memoranda of Understanding that are necessary to execute HSI's mission. PPRM also oversees

HSI information and records management program activities, including HSI's compliance with

FOIA requirements and disclosure activities that arise in the context of prosecutions, litigation, and inquiries from ICE stakeholders. On November 16, 2018, a Special Agent with PPRM conducted a search of HSI's internal intranet website, and the HSI Technical Operations Handbook, using the search terms "GPS" and "tracking." On November 19, 2018, a Special Agent with OTCD conducted a search of his shared drives and network hard drives. Specifically, the Special Agent conducted a manual search, not using keywords, where he knew responsive records would be, searching within HSI and ICE Directives and Policies, and a Technical Operations Handbook for any and all policies, procedures and training materials regarding the use of GPS tacking devices on vehicles crossing the borders. The HSI Special Agents located three (3) responsive documents, which were provided to ICE FOIA on December 10, 2018. On March 11, 2019, the ICE FOIA Office sent a letter to the Plaintiff advising ICE was withholding the 3 pages[3] in full under FOIA Exemption (b)(7)(E).

28.     On September 28, 2020, HSI RDU tasked HSI's Domestic Operations Division to conduct a search for responsive records. HSI's Domestic Operations Division oversees HSI's domestic field offices. On September 29, 2020, the Division Chief of HSI Domestic Operations, based on his vast experience and knowledge of his office responsibilities and duties, provided a no records response, stating that a search of HSI Domestic Operations records would not be reasonably calculated to uncover any relevant documents and stated that HSI Domestic Operations would defer to OTCD and PPRM.

29.     The reason that HSI did not find more than three documents related to this FOIA request is because HSI does not have policies or procedures regarding the use of GPS tracking devices on vehicles *specifically* crossing the borders or training manuals or training materials on

---

[3] The letter incorrectly stated that three pages were found and withheld. The letter should have said three documents were found and withheld. The three documents totaled fifteen pages.

the use of GPS tracking on vehicles *specifically* crossing the border. HSI has policies or procedures or training manuals or training materials on the use of GPS tracking for their criminal investigations and criminal cases, such as the need to work with an Assistant United States Attorney and obtain a warrant to use such devices, but Plaintiff's FOIA request did not ask for policies or procedures or training materials for the use of GPS tracking in general. It specifically asked for these documents as they related to vehicles crossing the borders. HSI does not have any such records specifically related to vehicles crossing the borders.

30.     As stated previously in paragraph 17, on September 30, 2020, the ICE FOIA Office reprocessed and released the fifteen pages provided to the ICE FOIA Office by HSI on December 10, 2018. The fifteen pages were bates stamped 2019-ICLI-00060 939 - 2019-ICLI-00060 953.

31.     On November 7, 2019, the ICE FOIA Office tasked the Office of the Principal Legal Advisor ("OPLA") to conduct a comprehensive search for records and to provide all records located during that search to the ICE FOIA Office for review and processing.

32.     In response to the FOIA tasking, the OPLA FOIA POC reviewed the substance of the FOIA request, and relying upon her subject matter expertise and knowledge of OPLA's activities, determined that four OPLA Associate Legal Advisors ("ALAs") from the OPLA Criminal Law Section ("CLS"), should be tasked to conduct a search for responsive documents. Between November 7 and November 22, 2019, the four ALAs conducted searches of their shared drives, network hard drives, and Microsoft Outlook e-mail accounts, using the search terms "Ignjatov", "GPS", "border", "Jones" "tracker", and "tracking". The four OPLA ALAs located approximately 9,000 pages of potentially responsive records, which were provided to ICE FOIA

on December 2, 2019. The responsive records were then produced to Plaintiff in productions dated December 30, 2019, March 5, 2020, and July 5, 2020.

33.     Between December 30, 2019 and July 5, 2020, the ICE FOIA Office, in conjunction with OPLA, determined that the vast majority of records provided by the four OPLA Associate Legal Advisors were not responsive to Plaintiff's FOIA request because they related to the use of GPS tracking in general, and not to the use of GPS tracking as it related to vehicles crossing the borders.

## VI.     ORGANIZATION OF ICE'S *VAUGHN* INDEX

34.     Pursuant to the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), a *Vaughn* index accompanies this declaration providing a description of each redaction and correlating each redaction to the corresponding exemption being applied.

35.     The *Vaughn* index is in a table format. The first row contains the titles of five (5) columns which provide a brief description of the information contained within the corresponding columns below.  The heading titles, from the left to the right side of the page, are titled "Entry Number," "Bates Page Number," "Withholding: Full/Partial," "Description of Records and Redactions, and Reasons for Redactions," and "Exemption(s) Applied to Redactions."

36.     There are forty-five (45) entry numbers. The second heading, Bates Page Number, refers to the page number on each of the responsive documents. The third heading, Withholding: Full/Partial, refers to the level of withholdings taken on the documents. The information below the fourth heading, Description of Records and Redactions, and Reasons for Redactions, describes the redacted information and the justification for redaction. The fifth heading, Exemption(s) Applied to Redactions, describes the exemptions applied to the redactions in the documents.

## VII.   DESCRIPTION OF FREEDOM OF INFORMATION ACT WITHHOLDINGS

### FOIA Exemption 5 U.S.C. § 552(b)(5)

37.     Exemption 5 of the FOIA allows the withholding of inter- or intra-agency records that are normally privileged in the civil discovery context. Pursuant to Exemption (b)(5), the three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege.

38.     ICE withheld internal discussions and deliberations between two OPLA attorneys. This information is protected by the attorney work-product privilege and by the attorney-client privilege. The purpose of this FOIA Exemption is to protect documents prepared by an attorney in contemplation of litigation. The withheld information here relates to a recent case decision and contemplates future litigation. This FOIA Exemption also protects the confidential communications between an attorney and his client relating to a legal matter for professional advice.

39.     The deliberative process privilege protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel. This would result in a chilling effect on intra- and inter-agency communications. ICE employees must be able to discuss proposed agency action freely. Further, if draft, un-finalized responses to public inquiries, and draft information regarding agency policies and enforcement actions were released, the public could potentially become confused regarding ICE's mission and enforcement

activities. The types of documents here include draft documents and pre-decisional documents, such as draft training documents and pre-decisional legal advice or guidance.

### FOIA Exemption 5 U.S.C. § 552(b)(7) Threshold

40.      5 U.S.C. § 552(b)(7) establishes a threshold requirement that, to withhold information on the basis of any of its subparts, the records or information must be compiled for law enforcement purposes.

41.      The information for which FOIA Exemption (b)(7) has been asserted in the instant matter satisfies this threshold requirement. ICE is the largest investigative arm of DHS, and is responsible, among other duties, for identifying and eliminating vulnerabilities within the nation's borders. ICE is tasked with preventing any activities that threaten national security and public safety by investigating the people, money, and materials that support illegal enterprises. Within ICE, with more than 6,500 Special Agents, HSI is the largest investigative entity in the Department of Homeland Security and the second largest in the federal government and enforces laws under U.S. customs laws (Title 19), general federal crimes (Title 18), the Controlled Substances Act (Title 21), as well as Titles 5, 6, 12, 22, 26, 28, 31, 46, 49, and 50 of the U.S. Code. Further, pursuant to the Immigration and Nationality Act codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. *See* 8 U.S.C. § 1103.  HSI uses its legal authority to investigate issues such as immigration crime, human rights violations and human smuggling; smuggling of narcotics, weapons and other types of contraband; and financial crimes, cybercrime and export enforcement issues. The law enforcement records at issue pertain to investigations conducted pursuant to DHS' law enforcement authorities. Therefore, all of the ICE records responsive to Plaintiff's FOIA request

were compiled for law enforcement purposes and meet the threshold requirement of FOIA

Exemption (b)(7).

## Exemptions 5 U.S.C. § 552 (b)(6) and (b)(7)(C)

42.     FOIA Exemption (b)(6), 5 U.S.C. § 552(b)(6), provides that the FOIA does not

apply to matters that are "personnel and medical files and similar files, the disclosure of which

would constitute a clearly unwarranted invasion of personal privacy."

43.     FOIA Exemption (b)(7)(C), 5 U.S.C. § 552(b)(7)(C), protects from disclosure

records or information "compiled for law enforcement purposes" if a release of the records or

information "could reasonably be expected to constitute an unwarranted invasion of personal

privacy."

44.     When asserting FOIA Exemptions 6 and 7(C), ICE balances an individual's

personal privacy interest against the public's interest in shedding light on ICE's performance of

its statutory duties.

45.     Specifically, ICE applied FOIA Exemption (b)(6) in conjunction with Exemption

(b)(7)(C) to protect from disclosure the names, phone numbers, e-mail addresses, and addresses,

room numbers, initials, and signatures, of federal law enforcement officers and other government

employees that are found in the documents.  ICE also applied FOIA Exemption (b)(6) in

conjunction with Exemption (b)(7)(C) to protect from disclosure the names, phone numbers, e-

mail addresses, and addresses, of third party individuals.

46.     To begin, by virtue of the positions held by the federal employees referenced in

the responsive records, they are permitted access to official law enforcement investigation

information. ICE gave consideration to the privacy interests of these federal employees in not

becoming targets of harassment – be it in the form of requests for access to law enforcement

information or requests for information about ongoing or closed investigations and their interest in remaining free of interference in the performance of their duties by persons who are currently of interest to law enforcement or oppose the ICE mission.

47.     As to that information specific to federal agents and immigration officers, the privacy consideration at issue is the interest of each of these individuals in remaining free from harassment and annoyance in conducting their official duties in the future, their interest in remaining free from harassment and annoyance in their private lives, and their interest in not being targeted by individuals in the future who may begrudge them.

48.     With respects to third party individuals, names, home addresses, e-mail addresses, and phone numbers were redacted from the responsive documentation. The disclosure of third party information could constitute an unwarranted invasion of personal privacy and subject the individuals to embarrassment, harassment, and undue public attention.

49.     Furthermore, third party individuals have a recognized privacy interest in not being publicly associated with law enforcement investigations through the release of records compiled for law enforcement purposes. The identities of persons named in law enforcement files (whether or not the named individual is the target of investigations or law enforcement actions) are properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C) in recognition of the stigmatizing connotation carried by the mere mention of individuals in law enforcement files. The individuals' privacy interests in the information contained in the record outweighs any minimal public interest in the disclosure of the information. Plaintiff has not articulated a sufficient public interest or public need to justify release of this information. The disclosure of this personally identifiable information (PII) serves no public benefit and would not assist the

public in understanding how ICE is carrying out its statutory responsibilities. Finally, the third

parties mentioned in the law enforcement records did not consent to the disclosure of their PII.

50.     ICE determined that the disclosure of the information described in Paragraphs 42

through 47 above would constitute a clearly unwarranted invasion of personal privacy.

Moreover, ICE determined that disclosure of the records and information described in

Paragraphs 42 through 47, which were compiled for law enforcement purposes, could reasonably

be expected to constitute an unwarranted invasion of personal privacy.

51.     Having determined that the individuals identified in the responsive records have a

cognizable privacy interest in not having their information released, ICE FOIA then balanced the

interest in safeguarding the individuals' privacy from unnecessary public scrutiny against the

public's interest in shedding light on the operations and activities of ICE in the performance of

its statutory duties. In each instance where Exemptions 6 and 7(C) were applied, the redaction

was limited to the name of the individual or other personally identifiable information, which if

released, would not shed light any further light as to the operations or activities of ICE. Most, if

not all, of the information surrounding the redactions was released and the limited extent of the

redaction is readily apparent from the context of the records. Additionally, Plaintiff has failed to

articulate any public interest that could be advanced by releasing the personally identifiable

information of the individuals in question. As such, releasing the information redacted per FOIA

Exemptions 6 and 7(C) would not shed light on the operations of ICE or the government.

52.     Based upon the traditional recognition of strong privacy interests in law

enforcement records, the categorical withholding of third party information identified in law

enforcement records is appropriate. Moreover, the third parties identified in these records have

not provided consent to the release of their personally identifying information as required by 6 C.F.R. §§ 5.3(a) & 5.21(d).

### Exemption 5 U.S.C. § 552(b)(7)(E)

53.     FOIA Exemption (b)(7)(E), 5 U.S.C. §552(b)(7)(E), protects from disclosure records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

54.     Accordingly, ICE applied FOIA Exemption (b)(7)(E) to protect from disclosure information contained in OPLA training documents, contracts, technical proposals, analysis documents, administrative and training manuals, policies, forms, and reports regarding GPS locations that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to circumvent the law. Additionally, the disclosure of these practices could permit people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken ICE during enforcement operations. The types of documents included here are technical operations handbook sections, training documents, memorandums, guidance documents, and investigation documents. These disclosures could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law.

### VIII.   SEGREGABILITY

55.     5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

56.      A line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.

57.      With respect to the records that were released in part, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released.

## IX.      JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.  Signed this 13th day of November, 2020.

_____
Fernando Pineiro, Acting FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009