UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELECTRONIC FRONTIER
FOUNDATION,

*Plaintiff,*

v.                                      Civil Action No. 19-2578 (TFH)

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY,

*Defendant*.

# CBP

# EXHIBIT A



November 5, 2018

**BY EMAIL** — ICE-FOIA@dhs.gov

U.S. Immigrations and Customs Enforcement
Freedom of Information Act Office
500 12th Street S.W., Stop 5009
Washington, D.C. 20536-5009

**BY FOIAONLINE**

CBP FOIA Headquarters Office
U.S. Customs and Border Protection
FOIA Division
90 K Street NE, 9th Floor
Washington, D.C. 20002

> **RE:** **Freedom of Information Act Request and Request for Expedited Processing**

To Whom It May Concern:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to Immigration and Customs Enforcement Homeland Security Investigations (HSI) and Customs and Border Protection (CBP), on behalf of the Electronic Frontier Foundation ("EFF"). Through this request, EFF seeks records that shed light on government policies regarding the use of GPS tracking devices.

In the case *United States v. Ignjatov*, proceeding in the District Court for the Central District of California, the government filed a declaration by Matthew Allen, Assistant Director of HSI's Domestic Operations Division, which claimed that HSI has promulgated policies regarding the use of GPS tracking devices on vehicles crossing the border into the United States.[1] The declaration states that HSI's policies allow trackers to be used on a vehicle for up to 48 hours without a warrant or individualized suspicion, and that the 48-hour rule does not apply for airplanes, commercial vehicles, and tractor-trailers. Lastly, Allen's declaration states HSI's position that these policies and procedures fully comply with the 2012 Supreme Court holding in *United States v. Jones* and *United States v. Flores-Montano*.[2] The motion alleges that CBP promulgates policies and/or procedures that adhere to the same interpretations of *Jones* as HSI's policies do.

---

[1] *See* attached Motion to Amend, Declaration of Matthew Allen.
[2] 565 U.S. 400 (2012), 541 U.S. 149 (2004).

EFF Freedom of Information Act Request RE: Border Vehicle GPS Tracking
November 5, 2018
Page 2 of 6

Accordingly, EFF requests any and all records created or received by HSI or CBP between January 3, 2012 (the date of the Supreme Court's opinion in *Jones*) and the date of this request, concerning:

- Policies and/or procedures regarding the use of GPS tracking devices on vehicles crossing the border.
- Training manuals and/or training materials on the use of GPS tracking devices on vehicles crossing the border.

**Request for Expedited Processing**

For the reasons discussed below, a "compelling need" exists for the records sought in this request. EFF is therefore entitled to expedited processing under 5 U.S.C. § 552(a)(6)(E)(v)(II) and 28 C.F.R. §§ 16.5(e)(1)(ii) and (iv).

*Expedited Processing under 28 C.F.R. § 16.5(e)(1)(ii)*

EFF is entitled to expedited processing because the request pertains to information about which there is an "urgency to inform the public about an actual or alleged federal government activity," and the request is "made by a person primarily engaged in disseminating information." 28 C.F.R. § 16.5(d)(1)(ii). The information we request easily satisfies this standard.

The requested records will shed light on the government's use of GPS tracking devices. EFF's request therefore deserves expedited processing because the government's response will "inform the public about an actual or alleged government activity." 28 C.F.R. § 16.5(d)(1)(ii).

Further, there is an "urgency to inform the public" about these vehicle tracking devices. *Id.* That means there is still time to for the public and government officials to debate the merits of the government's use of GPS tracking devices. Although *Ignjatov* marks the first public acknowledgement of this policy, its existence certainly predates this case, and therefore implicates the use of tracking for other border crossings. As tens of millions of vehicles cross the border into the United States every year, the use of GPS tracking for even a small fraction of these could result in thousands of uses.[3] The requested documents will shed light on how broadly these trackers are used. Furthermore, this use of GPS tracking devices at the border after the *Jones* ruling is unprecedented, and the District Court granted suppression of evidence resulting from the search.[4] The requested documents will provide additional facts and context for this important debate. Delay in processing this request, on the other hand, will hamper the public's ability to fully

---

[3] https://www.bts.gov/content/border-crossingentry-data.
[4] https://arstechnica.com/tech-policy/2018/09/judge-to-feds-no-you-cant-warrantlessly-put-a-gps-device-on-truck-entering-us/.

EFF Freedom of Information Act Request RE: Border Vehicle GPS Tracking
November 5, 2018
Page 3 of 6

analyze and debate the government's efforts to warrantlessly track vehicles without individualized suspicion.

Finally, as explained below in support of our request for "news media" treatment, EFF is "primarily engaged in disseminating information" under 28 C.F.R. § 16.11(c)(1)(i).

*Expedited Processing under 28 C.F.R.§ 16.5(e)(1)(iv)*

EFF is also entitled to expedited processing under 28 C.F.R. § 16.5(e)(1)(iv) because the subject of the request concerns "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." This particular tracking issue has garnered media coverage in several publications.[5] In addition, both the *Jones* and *Carpenter* rulings by the Supreme Court have been heavily covered in major news publications,[6] and the policies at issue in this request implicate those cases. More generally, the policies and procedures of government agencies about the entrance of people and goods through the U.S. border are of salient public interest in this moment.

**Request for News Media Fee Status**

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a representative of the news media pursuant to the FOIA and 28 C.F.R. § 16.10(b)(6). In requesting this classification, we note that the Department of Homeland Security and National Security Agency, among other agencies, have recognized that EFF qualifies as a "news media" requester, based upon the publication activities set forth below. Further, the U.S. Court of Appeals for the D.C. Circuit has stressed that "different agencies [must not] adopt inconsistent interpretations of the FOIA." *Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001), quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1287 (D.C. Cir. 1983).

---

[5] https://arstechnica.com/tech-policy/2018/10/feds-to-judge-we-still-think-we-can-put-gps-trackers-on-cars-entering-us/, http://yalejreg.com/nc/welcome-to-the-united-states-installing-gps-tracking-devices-at-the-border/,
https://www.techdirt.com/articles/20180902/16180240569/court-shuts-down-feds-attempt-to-expand-border-search-exception-to-cover-inland-gps-monitoring.shtml
[6] https://www.washingtonpost.com/politics/courts_law/supreme-court-rules-that-warrant-is-needed-to-access-cell-tower-records/2018/06/22/4f85a804-761e-11e8-805c-4b67019fcfe4_story.html?utm_term=.1e61c1e41688,
https://www.theatlantic.com/politics/archive/2018/06/the-supreme-court-tells-the-government-to-get-a-warrant/563567/,
https://www.wsj.com/articles/SB10001424052970203806504577178811800873358,
https://www.nytimes.com/2012/01/24/us/police-use-of-gps-is-ruled-unconstitutional.html

EFF Freedom of Information Act Request RE: Border Vehicle GPS Tracking
November 5, 2018
Page 4 of 6

EFF is a nonprofit public interest organization dedicated to "defending civil liberties in the digital world."[7] One of EFF's primary objectives is "to educate the general public and foster discussion and public policy analysis regarding the relationship between technology and society."[8] To accomplish this goal, EFF routinely and systematically disseminates information in several ways.

First, EFF maintains a frequently visited web site, https://www.eff.org, that reports the latest developments and contains in-depth information about a variety of civil liberties and intellectual property issues. Also, EFF has regularly published an online newsletter, the EFFector, since 1990. The EFFector currently has more than 280,000 subscribers. A complete archive of past EFFectors is available at https://www.eff.org/effector/. Furthermore, EFF publishes a blog, Deeplinks (https://www.eff.org/deeplinks/), that highlights the latest news from around the Internet.

In addition to reporting hi-tech developments, EFF staff members have presented research and in-depth analysis on technology issues in roughly 40 white papers published since 2002. These papers, available at https://www.eff.org/wp/, provide information and commentary on such diverse issues as electronic voting, free speech, privacy and intellectual property.

EFF has also published several books to educate the public about technology and civil liberties issues. *Everybody's Guide to the Internet* (MIT Press 1994)*, first published electronically as *The Big Dummy's Guide to the Internet* in 1993, was translated into several languages, and is still sold by Powell's Books (http://www.powells.com). EFF also produced *Protecting Yourself Online: The Definitive Resource on Safety, Freedom & Privacy in Cyberspace* (HarperEdge 1998), a "comprehensive guide to self-protection in the electronic frontier," which can be purchased via Amazon.com (http://www.amazon.com). Finally, *Cracking DES: Secrets of Encryption Research, Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details on encryption security to the public. The book is available online at http://cryptome.org/cracking -des.htm and for sale at Amazon.com.

**Request for a Public Interest Fee Waiver**

EFF is entitled to a waiver of duplication fees because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and 28 C.F.R. § 16.10(k)(1). To determine whether a request meets this standard, the agency determines whether "[d]isclosure of the requested information. . .  is likely to contribute

---

[7] *About EFF*, Electronic Frontier Foundation, https://www.eff.org/about (last visited October 26, 2018).

[8] *Guidestar Basic Report*, Electronic Frontier Foundation, https://www.guidestar.org/organizations/04-3091431/electronic-frontier-foundation.aspx (last visited Oct. 26, 2018).

EFF Freedom of Information Act Request RE: Border Vehicle GPS Tracking
November 5, 2018
Page 5 of 6

significantly to public understanding of the operations or activities of the government,"
28 C.F.R. § 16.11(k)(1)(i), and whether such disclosure "is not primarily in the
commercial interest of the requester." 28 C.F.R. § 16.11(k)(1)(ii). This request satisfies
these criteria.

First, any use of GPS tracking devices by government agents at the border is undeniably
within the scope of "the operations or activities of the government." 28 C.F.R. §
16.11(k)(1)(i).

Second, disclosure of the requested information will contribute significantly to a public
understanding of government operations or activities. *Id*. EFF has requested information
that will shed light on the government's use of GPS tracking devices. As discussed
above, this information will provide context for the ongoing public debate. EFF will
make the information it obtains in this request available to the public and the media
through its web site and newsletter, which highlight developments concerning privacy
and civil liberties issues, and/or other channels discussed more fully above.

Furthermore, a fee waiver is appropriate here because EFF has no commercial interest in
the disclosure of the requested records. 28 C.F.R. § 16.11(k)(1)(ii). EFF is a 501(c)(3)
nonprofit organization, and will derive no commercial benefit from the information
requested here.

**Format of Documents**

FOIA provides that agency records include records "maintained by an agency in any
format, including electronic format." 5 USC § 552(f)(2)(A). FOIA also provides that "an
agency shall make reasonable efforts to search for the records in electronic form or
format," 5 USC § 552(a)(3)(C), and "shall provide the record in any form or format
requested by the person if the record is readily reproducible by the agency in that form or
format." 5 USC § 552(a)(3)(B). Accordingly, we request that, where available and
appropriate, the requested records be provided in the following manner:

1. That files stored in electronic format be produced in electronic format;

2. That files be produced either in their native format (likely appropriate
   for spreadsheets and database files – for example, Microsoft Excel
   files produced as .xls electronic files) or as text-searchable .pdf
   formatted files (likely appropriate for word processing documents,
   letters, memos, or emails);

3. That files preserve the "parent / child" relationship between records
   (for example, if an email has an attachment, that attachment – or, if
   appropriate, information regarding the attachment's withholding –

EFF Freedom of Information Act Request RE: Border Vehicle GPS Tracking
November 5, 2018
Page 6 of 6

   should accompany or follow the .pdf of the email); and that the
   beginning and ending of individual records is clearly indicated.

EFF also requests that all pages be consecutively numbered and that the page numbers of pages or records withheld in full be clearly indicated in a document or file accompanying the produced records.

Thank you for your consideration of this request. If you have any questions or concerns, please do not hesitate to contact me at michael.rosenbloom@eff.org or (415) 436-9333 ext. 136. As the FOIA provides, I will anticipate a determination on this request for expedited processing within 10 calendar days.

I certify that, to the best of my knowledge and belief, all information within this request is true and correct.

Sincerely,

Michael Rosenbloom
Legal Fellow
Electronic Frontier Foundation

Jennifer Lynch
Senior Staff Attorney
Electronic Frontier Foundation

Attachments

NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
VICTORIA A. DEGTYAREVA (Cal. Bar No. 284199)
Assistant United States Attorney
OCDETF Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-7635
     Facsimile: (213) 894-0142
     E-mail:    Victoria.Degtyareva@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                 UNITED STATES DISTRICT COURT

             FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. ED CR 17-222(A)-JGB |
|---|---|
| Plaintiff, | GOVERNMENT'S REPORT ON THE STATUS OF THE CASE AND MOTION TO AMEND THE COURT'S AUGUST 24, 2018 ORDER; DECLARATION OF HSI ASSISTANT DIRECTOR MATTHEW C. ALLEN |
| v. | |
| SLAVCO IGNJATOV, et al., | |
| Defendants. | Hearing Date: November 5, 2018 Hearing Time: 2:00 p.m. Location: Courtroom of the Hon. Jesus G. Bernal |

     Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorney Victoria A.
Degtyareva, hereby files its Report on the Status of the Case and
Motion to Amend the Court's August 24, 2018 Order (the "Order").
Specifically, the government will not appeal the Order and will move
to dismiss the charges against defendants Slavco Ignjatov and
Valentino Hristovski.  Before the case is dismissed, however, the
government respectfully requests that the Court amend the portion of

its Order stating that the agents' actions created a scenario of significant government misconduct.

This Status Report and Motion to Amend is based upon the attached memorandum of points and authorities and the declaration of Homeland Security Investigations Assistant Director Matthew C. Allen, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 28, 2018    Respectfully submitted,

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division


                          /s/
VICTORIA A. DEGTYAREVA
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The government will not appeal the Court's August 24, 2018 Order granting the motion to suppress filed by defendants Slavco Ignjatov and Valentino Hristovski (Dkt. No. 121), and will move to dismiss the charges as to these two defendants based on the suppression of the principle evidence against them.[1]

Before the case is dismissed, however, the government requests the Court to amend its finding at page 12 of the Order regarding government misconduct. The government respectfully submits that, under all of the circumstances in this case, including the information set forth in the attached declaration of Homeland Security Investigations ("HSI") Assistant Director Matthew C. Allen regarding HSI policy, the agents' actions do not warrant a finding of misconduct. The law pertaining to the use of a GPS tracker at the border is a question of first impression in this Circuit and was unsettled at the time the agents placed the tracker in this case; the FBI agent and the LAPD officer consulted with HSI about the law governing installation of a GPS tracker at the international border; the HSI agents accurately conveyed HSI policy to them; and that HSI policy was consistent with the Department of Justice's ("DOJ") litigating position. In this context, the government submits that

---

[1] Djordje Karac ("Karac") and FNU LNU, also known as "Boss" ("Boss"), are also charged in the First Superseding Indictment. The government will not move to dismiss the charges as to Karac and Boss because, even without the suppressed evidence, it can prove the case against them. Agents seized approximately 194 kilograms of cocaine from Karac in March 2017 (where no GPS tracker was used) and text messages, recorded statements by co-conspirators, and testimony from cooperating witnesses confirms Boss's involvement in the March 2017 shipment of cocaine.

the FBI agent and the LAPD officer did not engage in misconduct, and in light of the impact of a misconduct finding on their careers, the government respectfully requests that the Court revise its Order regarding the misconduct findings.[2]

**II.  ARGUMENT**

When the GPS tracker was installed in this case, the law regarding application of GPS trackers at the border was not settled. As the Court stated in the Order, "[t]he application of a GPS tracking device at a border appears to be a matter of first impression in this Circuit." (Order at 4.)  The government is also not aware of case law in any other Circuit expressly addressing this issue, and the Supreme Court decision in Carpenter v. United States, 138 S.Ct. 2206 (2018), was issued after the events at issue in this case.  When the agents decided to install the tracker in this case, the law regarding application of a GPS tracker to a commercial vehicle at the international border and subsequent tracking of that vehicle for fewer than 48 hours after entering the United States was not clearly established.  Cf. Brown v. Illinois, 422 U.S. 590, 592 (1975) (officers searched the defendant's apartment and arrested the defendant, all without probable cause and without a warrant, in violation of clearly established law).  In assessing whether a GPS tracker could be installed on the truck at the border, FBI Special Agent Hannah Monroe and LAPD Officer Asatur Mkrtchyan consulted with

---

[2] Based on the evidence before the Court and the government's decision to dismiss this case, the government does not believe that an evidentiary hearing is required for the Court to grant the limited relief which the government seeks in this motion.  If the Court wishes to hear further testimony from any of the relevant witnesses, however, they can be made available to be questioned by the Court.

1   the Department of Homeland Security ("DHS"), which includes both HSI
2   and Customs and Border Patrol ("CBP").

3        Special Agent Monroe and Officer Mkrtchyan testified that they
4   relied on the guidance of HSI and CBP agents.  Special Agent Monroe
5   testified, "I'm trained as an F.B.I. agent that the border search
6   experts are H.S.I. and C.B.P., and when I have questions about border
7   search and authority that I should defer to them and their expertise,
8   which I did." (6/25/18 Tr. at 45:2-6.)  Likewise, Officer Mkrtchyan
9   testified that he is not trained on things like border searches,
10  border authority, or applying GPS trackers at the border because as a
11  police officer in Los Angeles, "we don't really work with too many
12  borders.  We rely on our federal partners, such as the Department of
13  Homeland Security, CBP, to assist us on investigations that lead us
14  to the border or at the border." (7/9/2018 Tr. at 102:8-18.)
15  Although, as the Court noted, "Officer Mkrtchyan testified that in
16  general he understood that a warrant is necessary to install a GPS
17  device," (Order at 12), in this case, because the GPS device was to
18  be installed not in Los Angeles but at the international border,
19  Officer Mkrtchyan relied upon the information provided by federal
20  border agents.

21       Special Agent Monroe consulted with two separate DHS agents,
22  both of whom informed her that under HSI policy a GPS tracker could
23  lawfully be installed on defendant's commercial truck at the border
24  and subsequently monitored without a warrant.  In their declarations,
25  Special Agent Monroe and Officer Mkrtchyan both stated that before
26  defendants entered the United States, they and other agents
27  participated in a conference call with a CBP officer, who told them
28  that: "[B]order agents were authorized to install GPS trackers on any

                                    3

vehicle at the border without a warrant so long as the GPS monitoring did not exceed 48 hours, and that the 48-hour rule did not apply to commercial vehicles, such as semi-trucks, which are subject to increased government regulation." (Declaration of Hannah Monroe ("Monroe Decl.") ¶ 14; Declaration of Asatur Mkrtchyan ¶ 6.)

Special Agent Monroe did not rely solely on the guidance of this CBP officer. She spoke with an HSI agent, who was assigned to a border district and who confirmed that the CBP officer's guidance was correct. (Monroe Decl. ¶ 14.) It was only after receiving this confirmation that Special Agent Monroe asked the HSI agent to install trackers on defendants' commercial truck at the Canada-United States border. (Id.) Although the Court has concluded that the guidance these agents received was incorrect, the government submits that in seeking guidance from DHS, Special Agent Monroe and Officer Mkrtchyan did not act in bad faith, deliberately, recklessly, or negligently.

In addition, Special Agent Monroe testified that the advice she received from the DHS agents was "per H.S.I. policy." (6/25/2018 Tr. at 42:22 to 43:24). As set forth in the attached declaration, the guidance on which Special Agent Monroe and Officer Mkrtchyan relied was, in fact, HSI's policy. (Declaration of HSI Assistant Director Matthew C. Allen ¶¶ 4-5.) Further, that policy is consistent with the litigating position of the Department of Justice ("DOJ"). Specifically, the DOJ does not believe that the Fourth Amendment requires a warrant to track a commercial vehicle on the open roads for fewer than 48 hours after entering the United States. The government recognizes and will not appeal this Court's ruling rejecting that position; however, in an area where the law was unsettled and the agents sought and followed the HSI guidance, the

4

government respectfully submits that their actions do not warrant a
finding of misconduct, and that a misconduct finding is not necessary
to the disposition of the issue.  As the Court noted in its Order,
when considering whether the attenuation doctrine applies to a
particular case, one factor is "the purpose and flagrancy of the
official misconduct."  (Order at 10, <u>citing</u> <u>Utah v. Strieff</u>, 136 S.
Ct. 2056, 2062 (2016).)  This factor is not, by itself, dispositive,
and the Court need not find that Special Agent Monroe and Officer
Mkrtchyan engaged in purposeful or flagrant misconduct in order to
find the attenuation doctrine does not apply.  The evidence shows
that their purpose was not to flout the Fourth Amendment or to
circumvent the warrant requirement; rather, they were following HSI
guidance.  Although the Court found that HSI's guidance and DOJ's
litigating position were flawed, the government respectfully submits
that Officer Mkrtchyan and Special Agent Monroe should not be found
to have engaged in misconduct for relying on such guidance in an
unsettled area of law.

**III. CONCLUSION**

        For the foregoing reasons, the government respectfully requests
that this Court grant the government's motion and amend its August
24, 2018 Order to delete the paragraph on page 12 starting with
"Lastly, the Court considers the official misconduct weighs against
the government."  Alternatively, if the Court is not inclined to
strike the paragraph, the government requests that the Court amend
the paragraph to state that its finding of "significant government
misconduct" was aimed at the government position as a whole, and it
was not a finding that Officer Mkrtchyan or Special Agent Monroe
acted in bad faith, deliberately, recklessly, or negligently.

NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
VICTORIA A. DEGTYAREVA (Cal. Bar No. 284199)
Assistant United States Attorney
OCDETF Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-7635
    Facsimile: (213) 894-0142
    E-mail: Victoria.Degtyareva@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    vs.<br><br>SLAVCO IGNJATOV, et al.,<br><br>    Defendants. | Case Number: ED CR 17-222(A)-JGB<br><br>**DECLARATION OF ASSISTANT DIRECTOR MATTHEW C. ALLEN** |

I, Matthew C. Allen, declare as follows:

1.    I am the Assistant Director (AD) for the Domestic Operations Division within the U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement's (ICE) Homeland Security Investigations (HSI). I have occupied this position since 2018. From 2007 to 2008, I was the Deputy Assistant Director (DAD) of the Narcotics, Financial and Public Safety Division. From 2006 to 2007 I was the DAD and acting DAD for the Critical Infrastructure and Fraud Division in the ICE, Office of Investigations. Before that position, I served as

1  Headquarters Unit Chief for the Contraband Smuggling Unit and previously served as the

2  Resident Agent in Charge in Nogales, Arizona, where I was responsible for managing ICE's

3  investigative activities within the Nogales geographic area.

4      2.     In my current position, I am responsible for managing, directing and coordinating

5  all investigative activities of the various domestic field offices.  These responsibilities include

6  ensuring implementation and adherence to policies, procedures, guidelines, and directives

7  governing investigative activities. The Domestic Operations Division ensures the implementation

8  of investigative activities and programs in conformance with HSI's national priorities. The

9  Division is also responsible for monitoring and evaluating productivity of the various field offices

10  and ensuring prompt communication of significant activity from field components to appropriate

11  headquarters management.

12      3.     I am aware of the proceedings and underlying investigation associated with the

13  above-captioned case.  I submit this declaration to describe HSI's longstanding practices and

14  procedures on the use of GPS tracking devices in HSI investigations.  The statements I make

15  herein are based on my personal knowledge and on facts and information provided to me in the

16  course of my official duties.

17      4.     HSI exercises its border-search authority for the purpose of protecting national

18  security and revenue of the United States.  Pursuant to this authority, it is HSI's policy that a

19  customs officer may install a GPS tracking device on a vehicle at the United States border without

20  a warrant or individualized suspicion.  HSI limits warrantless GPS monitoring to 48 hours, with

21  the exception of airplanes, commercial vehicles, and semi-tractor trailers, which have a

22  significantly reduced expectation of privacy in the location of their vehicles.  It is HSI's position

23  that such policy is consistent with the U.S. Supreme Court's decisions in *United States v. Jones*,

24  565 U.S. 400 (2012), and *United States v. Flores-Montano*, 541 U.S. 149 (2004).

25      5.     HSI's position on the use of GPS tracking devices was developed, in consultation

26  with the Department of Justice, in response to the 2012 *Jones* decision, and is found in HSI

policies and procedures, as well as trainings regularly provided to HSI personnel, all of which were in place throughout the pendency of this case and the underlying investigation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on September 24, 2018.

_____
Matthew C. Allen