UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELECTRONIC FRONTIER
FOUNDATION,

*Plaintiff,*

v.

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY,

*Defendant*.

Civil Action No. 19-2578 (TFH)

# ICE

# Exhibit 5



April 18, 2019

**VIA U.S. MAIL**

U.S. Immigration and Customs Enforcement
Office of the Principal Legal Advisor
U.S. Department of Homeland Security
500 12th Street, S.W., Mail Stop 5900
Washington, D.C. 20536-5900

<u>RE:   **FOIA Appeal & Request for Expedited Processing**</u>

To Whom It May Concern:

This letter constitutes an appeal under the Freedom of Information Act ("FOIA"), 5
U.S.C. § 552 *et seq.*, of FOIA Request **2019-ICFO-21210**, made by the Electronic
Frontier Foundation ("EFF") to U.S. Immigration and Customs Enforcement ("ICE") on
November 5, 2018. The request stemmed from statements made in the case *United States
v. Ignjatov*[1] regarding government policies around the use of GPS tracking devices.
Specifically, the government filed a declaration by Matthew Allen, Assistant Director of
Homeland Security Investigations' ("HSI") Domestic Operations Division, which
claimed that HSI and U.S. Customs and Border Protection ("CBP") have promulgated
policies regarding the use of GPS tracking devices on vehicles crossing the border into
the United States.[2] The request sought records related to policies, procedures, training
manuals, and/or training materials regarding the use of GPS tracking devices on vehicles
crossing the border.

On March 11, 2019, ICE sent a letter stating that it found three pages responsive to the
request, but that all three pages would be withheld in their entirety pursuant to FOIA
Exemption 7(E).[3] The response further stated that "disclosure of certain law enforcement
sensitive information contained within the responsive records could reasonably be
expected to risk circumvention of the law," and that "the techniques and procedures at
issue are not well known to the public." Both the ICE correspondence denying this
request and the original request are attached.

EFF appeals the denial of this request because ICE has failed to demonstrate how
releasing the requested information would risk circumvention of the law. EFF also
appeals the adequacy of ICE's search for records related to the request.

---

[1] No. 5:17-cr-00222-JGB (C.D. Cal. Sept. 9, 2018).
[2] *See* attached Motion to Amend, Declaration of Matthew Allen.
[3] 5 U.S.C. § 522(b)(7)(E).

FOIA Appeal & Request for Expedited Processing
April 18, 2019
Page 2 of 3

### Exemption 7(E) Does Not Apply

Exemption 7(E) allows the government to withhold law enforcement records if their release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 522(b)(7)(E). To withhold records under Exemption 7(E), an agency must show that "the records contain law-enforcement techniques and procedures that are 'generally unknown to the public.'" *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 245 (D.D.C. 2013) (quoting *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 849 F. Supp. 2d 13, 36 (D.D.C. 2012)). Additionally, the agency must demonstrate that disclosure of the records "'could reasonably be expected to risk circumvention of the law.'" *Id.* When claiming a FOIA exemption, an agency "cannot justify its withholdings on the basis of summary statements that merely reiterate legal standards or 'offer far-ranging category definitions for information.'" *Am. Immigration Council*, 950 F. Supp. 2d at 235 (quoting *King v. Dep't of Justice*, 830 F.2d 210, 221 (D.C. Cir. 1987)).

In its response, ICE stated that "disclosure of certain law enforcement sensitive information contained within the responsive records could reasonably be expected to risk circumvention of the law." The agency went on to state that it was withholding production in response to the request because "the techniques and procedures at issue are not well known to the public."

This mere reiteration of the legal standards provides little detail as to why Exemption 7(E) applies to the records sought in EFF's request. ICE's response fails to show "logically" how the release of the requested records "might create a risk of circumvention of the law."[4] Law enforcement's use of GPS tracking devices on vehicles has been widely known and publicly debated for years.[5] The Supreme Court took up the issue in 2012 in *United States v. Jones*, finding that law enforcement's warrantless affixing of a GPS device to a vehicle and using the device to monitor the vehicle's movements violated the Fourth Amendment.[6] Moreover, in *United States v. Ignjatov*, HSI Assistant Director Matthew Allen's declaration describes HSI's practices regarding use of GPS tracking devices on vehicles crossing the border, and explains that HSI's position is

---

[4] *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 251 (D.C. Cir. 1993).

[5] *See, e.g.*, Nina Totenberg, "Do Police Need Warrants for GPS Tracking Devices?" NPR, Nov. 8, 2011, https://www.npr.org/2011/11/08/142032419/do-police-need-warrants-for-gps-tracking-devices; David Kravets, "Feds: No Warrant Needed to Track Your Car with a GPS Device," Wired, Mar. 18, 2013, https://www.wired.com/2013/03/gps-warrant-requirement/; Kim Zetter, "Busted! Two New Fed GPS Trackers Found on SUV," Nov. 18, 2011, Wired, https://www.wired.com/2011/11/gps-tracker-times-two/; Associated Press, "GPS tracking case has left unsettled questions," June 16, 2014, *available at* https://www.usatoday.com/story/tech/2014/06/16/gps-tracking-case-questions/10570743/; Bob Egelko, "San Jose Arab American sues FBI over GPS," S.F. Chronicle, Mar. 3, 2011, https://www.sfgate.com/bayarea/article/San-Jose-Arab-American-sues-FBI-over-GPS-2528276.php.

[6] 565 U.S. 400 (2012).

FOIA Appeal & Request for Expedited Processing
April 18, 2019
Page 3 of 3

detailed in the agency's policies, procedures, and trainings.[7] This declaration was
publicly filed and multiple media outlets reported on it.[8]

In addition, Exemption 7(E) does not extend to "administrative staff manuals and
instructions to staff that affect a member of the public," since those documents are
required to be made public. 5 U.S.C. § 522(a)(2). Policies, procedures, training manuals,
and/or training materials regarding HSI's use of GPS tracking devices on vehicles
crossing the border fit within that description. Accordingly, Exemption 7(E) should not
apply.

### ICE Has Failed to Conduct an Adequate Search

Under FOIA, the agency responding to the FOIA request must conduct a search
"reasonably calculated to uncover all relevant documents." *Morley v. C.I.A.*, 508 F.3d
1108, 1114 (D.C. Cir. 2007).

Here, ICE's response stated that its search produced three pages of records. However,
there was no information as to which documents the three pages came from, nor even the
number of documents the three pages encompassed.

Accordingly, EFF appeals the adequacy of ICE's search and requests that ICE provide a
description of its search in its response to this appeal.

If you have any questions or concerns, please feel free to contact me at saira@eff.org or
(415) 436-9333 ext. 204.

Sincerely,

Saira Hussain
Staff Attorney
Electronic Frontier Foundation

---

[7] *See* Declaration of Matthew Allen, *supra* note 2, at 2.

[8] Cyrus Farivar, "Feds to judge: We still think we can put GPS trackers on cars entering US," Ars
Technica, Oct. 6, 2018, https://arstechnica.com/tech-policy/2018/10/feds-to-judge-we-still-think-we-can-
put-gps-trackers-on-cars-entering-us/; Tim Cushing, "DHS Investigators Argue the Border Warrant
Exception Covers Searches Performed Miles from the Border," TechDirt, Oct. 11, 2018,
https://www.techdirt.com/articles/20181009/10483840803/dhs-investigators-argue-border-warrant-
exception-covers-searches-performed-miles-border.shtml.



November 5, 2018

**BY EMAIL** — ICE-FOIA@dhs.gov

U.S. Immigrations and Customs Enforcement
Freedom of Information Act Office
500 12ᵗʰ Street S.W., Stop 5009
Washington, D.C. 20536-5009

**BY FOIAONLINE**

CBP FOIA Headquarters Office
U.S. Customs and Border Protection
FOIA Division
90 K Street NE, 9ᵗʰ Floor
Washington, D.C. 20002

### RE:  Freedom of Information Act Request and Request for Expedited Processing

To Whom It May Concern:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to Immigration and Customs Enforcement Homeland Security Investigations (HSI) and Customs and Border Protection (CBP), on behalf of the Electronic Frontier Foundation ("EFF"). Through this request, EFF seeks records that shed light on government policies regarding the use of GPS tracking devices.

In the case *United States v. Ignjatov*, proceeding in the District Court for the Central District of California, the government filed a declaration by Matthew Allen, Assistant Director of HSI's Domestic Operations Division, which claimed that HSI has promulgated policies regarding the use of GPS tracking devices on vehicles crossing the border into the United States.[1] The declaration states that HSI's policies allow trackers to be used on a vehicle for up to 48 hours without a warrant or individualized suspicion, and that the 48-hour rule does not apply for airplanes, commercial vehicles, and tractor-trailers. Lastly, Allen's declaration states HSI's position that these policies and procedures fully comply with the 2012 Supreme Court holding in *United States v. Jones* and *United States v. Flores-Montano*.[2] The motion alleges that CBP promulgates policies and/or procedures that adhere to the same interpretations of *Jones* as HSI's policies do.

---

[1] *See* attached Motion to Amend, Declaration of Matthew Allen.
[2] 565 U.S. 400 (2012), 541 U.S. 149 (2004).

EFF Freedom of Information Act Request RE: Border Vehicle GPS Tracking
November 5, 2018
Page 2 of 6

Accordingly, EFF requests any and all records created or received by HSI or CBP
between January 3, 2012 (the date of the Supreme Court's opinion in *Jones*) and the date
of this request, concerning:

- Policies and/or procedures regarding the use of GPS tracking devices on
  vehicles crossing the border.
- Training manuals and/or training materials on the use of GPS tracking
  devices on vehicles crossing the border.

## Request for Expedited Processing

For the reasons discussed below, a "compelling need" exists for the records sought in this
request. EFF is therefore entitled to expedited processing under 5 U.S.C. §
552(a)(6)(E)(v)(II) and 28 C.F.R. §§ 16.5(e)(1)(ii) and (iv).

### *Expedited Processing under 28 C.F.R. § 16.5(e)(1)(ii)*

EFF is entitled to expedited processing because the request pertains to information about
which there is an "urgency to inform the public about an actual or alleged federal
government activity," and the request is "made by a person primarily engaged in
disseminating information." 28 C.F.R. § 16.5(d)(1)(ii). The information we request easily
satisfies this standard.

The requested records will shed light on the government's use of GPS tracking devices.
EFF's request therefore deserves expedited processing because the government's
response will "inform the public about an actual or alleged government activity." 28
C.F.R. § 16.5(d)(1)(ii).

Further, there is an "urgency to inform the public" about these vehicle tracking devices.
*Id.* That means there is still time to for the public and government officials to debate the
merits of the government's use of GPS tracking devices. Although *Ignjatov* marks the
first public acknowledgement of this policy, its existence certainly predates this case, and
therefore implicates the use of tracking for other border crossings. As tens of millions of
vehicles cross the border into the United States every year, the use of GPS tracking for
even a small fraction of these could result in thousands of uses.[3] The requested
documents will shed light on how broadly these trackers are used. Furthermore, this use
of GPS tracking devices at the border after the *Jones* ruling is unprecedented, and the
District Court granted suppression of evidence resulting from the search.[4] The requested
documents will provide additional facts and context for this important debate. Delay in
processing this request, on the other hand, will hamper the public's ability to fully

---

[3] https://www.bts.gov/content/border-crossingentry-data.

[4] https://arstechnica.com/tech-policy/2018/09/judge-to-feds-no-you-cant-warrantlessly-
put-a-gps-device-on-truck-entering-us/.

analyze and debate the government's efforts to warrantlessly track vehicles without individualized suspicion.

Finally, as explained below in support of our request for "news media" treatment, EFF is "primarily engaged in disseminating information" under 28 C.F.R. § 16.11(c)(1)(i).

*Expedited Processing under 28 C.F.R § 16.5(e)(1)(iv)*

EFF is also entitled to expedited processing under 28 C.F.R. § 16.5(e)(1)(iv) because the subject of the request concerns "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." This particular tracking issue has garnered media coverage in several publications.[5] In addition, both the *Jones* and *Carpenter* rulings by the Supreme Court have been heavily covered in major news publications,[6] and the policies at issue in this request implicate those cases. More generally, the policies and procedures of government agencies about the entrance of people and goods through the U.S. border are of salient public interest in this moment.

**Request for News Media Fee Status**

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a representative of the news media pursuant to the FOIA and 28 C.F.R. § 16.10(b)(6). In requesting this classification, we note that the Department of Homeland Security and National Security Agency, among other agencies, have recognized that EFF qualifies as a "news media" requester, based upon the publication activities set forth below. Further, the U.S. Court of Appeals for the D.C. Circuit has stressed that "different agencies [must not] adopt inconsistent interpretations of the FOIA." *Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001), quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1287 (D.C. Cir. 1983).

---

[5] https://arstechnica.com/tech-policy/2018/10/feds-to-judge-we-still-think-we-can-put-gps-trackers-on-cars-entering-us/, http://yalejreg.com/nc/welcome-to-the-united-states-installing-gps-tracking-devices-at-the-border/,

https://www.techdirt.com/articles/20180902/16180240569/court-shuts-down-feds-attempt-to-expand-border-search-exception-to-cover-inland-gps-monitoring.shtml

[6] https://www.washingtonpost.com/politics/courts_law/supreme-court-rules-that-warrant-is-needed-to-access-cell-tower-records/2018/06/22/4f85a804-761e-11e8-805c-4b67019fcfe4_story.html?utm_term=.1e61c1e41688,

https://www.theatlantic.com/politics/archive/2018/06/the-supreme-court-tells-the-government-to-get-a-warrant/563567/,

https://www.wsj.com/articles/SB10001424052970203806504577178811800873358,
https://www.nytimes.com/2012/01/24/us/police-use-of-gps-is-ruled-unconstitutional.html

EFF Freedom of Information Act Request RE: Border Vehicle GPS Tracking
November 5, 2018
Page 4 of 6

EFF is a nonprofit public interest organization dedicated to "defending civil liberties in
the digital world."[7] One of EFF's primary objectives is "to educate the general public and
foster discussion and public policy analysis regarding the relationship between
technology and society."[8] To accomplish this goal, EFF routinely and systematically
disseminates information in several ways.

First, EFF maintains a frequently visited web site, https://www.eff.org, that reports the
latest developments and contains in-depth information about a variety of civil liberties
and intellectual property issues. Also, EFF has regularly published an online newsletter,
the EFFector, since 1990. The EFFector currently has more than 280,000 subscribers. A
complete archive of past EFFectors is available at https://www.eff.org/effector/.
Furthermore, EFF publishes a blog, Deeplinks (https://www.eff.org/deeplinks/), that
highlights the latest news from around the Internet.

In addition to reporting hi-tech developments, EFF staff members have presented
research and in-depth analysis on technology issues in roughly 40 white papers published
since 2002. These papers, available at https://www.eff.org/wp/, provide information and
commentary on such diverse issues as electronic voting, free speech, privacy and
intellectual property.

EFF has also published several books to educate the public about technology and civil
liberties issues. *Everybody's Guide to the Internet* (MIT Press 1994), first published
electronically as *The Big Dummy's Guide to the Internet* in 1993, was translated into
several languages, and is still sold by Powell's Books (http://www.powells.com). EFF
also produced *Protecting Yourself Online: The Definitive Resource on Safety, Freedom &
Privacy in Cyberspace* (HarperEdge 1998), a "comprehensive guide to self-protection in
the electronic frontier," which can be purchased via Amazon.com
(http://www.amazon.com). Finally, *Cracking DES: Secrets of Encryption Research,
Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details on encryption
security to the public. The book is available online at http://cryptome.org/cracking
-des.htm and for sale at Amazon.com.

### Request for a Public Interest Fee Waiver

EFF is entitled to a waiver of duplication fees because disclosure of the requested
information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and
28 C.F.R. § 16.10(k)(1). To determine whether a request meets this standard, the agency
determines whether "[d]isclosure of the requested information. . . is likely to contribute

---

[7] *About EFF*, Electronic Frontier Foundation, https://www.eff.org/about (last visited
October 26, 2018).

[8] *Guidestar Basic Report*, Electronic Frontier Foundation,
https://www.guidestar.org/organizations/04-3091431/electronic-frontier-foundation.aspx
(last visited Oct. 26, 2018).

significantly to public understanding of the operations or activities of the government,"
28 C.F.R. § 16.11(k)(1)(i), and whether such disclosure "is not primarily in the
commercial interest of the requester." 28 C.F.R. § 16.11(k)(1)(ii). This request satisfies
these criteria.

First, any use of GPS tracking devices by government agents at the border is undeniably
within the scope of "the operations or activities of the government." 28 C.F.R. §
16.11(k)(1)(i).

Second, disclosure of the requested information will contribute significantly to a public
understanding of government operations or activities. *Id.* EFF has requested information
that will shed light on the government's use of GPS tracking devices. As discussed
above, this information will provide context for the ongoing public debate. EFF will
make the information it obtains in this request available to the public and the media
through its web site and newsletter, which highlight developments concerning privacy
and civil liberties issues, and/or other channels discussed more fully above.

Furthermore, a fee waiver is appropriate here because EFF has no commercial interest in
the disclosure of the requested records. 28 C.F.R. § 16.11(k)(1)(ii). EFF is a 501(c)(3)
nonprofit organization, and will derive no commercial benefit from the information
requested here.

### Format of Documents

FOIA provides that agency records include records "maintained by an agency in any
format, including electronic format." 5 USC § 552(f)(2)(A). FOIA also provides that "an
agency shall make reasonable efforts to search for the records in electronic form or
format," 5 USC § 552(a)(3)(C), and "shall provide the record in any form or format
requested by the person if the record is readily reproducible by the agency in that form or
format." 5 USC § 552(a)(3)(B). Accordingly, we request that, where available and
appropriate, the requested records be provided in the following manner:

1. That files stored in electronic format be produced in electronic format;

2. That files be produced either in their native format (likely appropriate
   for spreadsheets and database files – for example, Microsoft Excel
   files produced as .xls electronic files) or as text-searchable .pdf
   formatted files (likely appropriate for word processing documents,
   letters, memos, or emails);

3. That files preserve the "parent / child" relationship between records
   (for example, if an email has an attachment, that attachment – or, if
   appropriate, information regarding the attachment's withholding –

EFF Freedom of Information Act Request RE: Border Vehicle GPS Tracking
November 5, 2018
Page 6 of 6

> should accompany or follow the .pdf of the email); and that the
> beginning and ending of individual records is clearly indicated.

EFF also requests that all pages be consecutively numbered and that the page numbers of
pages or records withheld in full be clearly indicated in a document or file accompanying
the produced records.

Thank you for your consideration of this request. If you have any questions or concerns,
please do not hesitate to contact me at michael.rosenbloom@eff.org or (415) 436-9333
ext. 136. As the FOIA provides, I will anticipate a determination on this request for
expedited processing within 10 calendar days.

I certify that, to the best of my knowledge and belief, all information within this request
is true and correct.

Sincerely,

Michael Rosenbloom
Legal Fellow
Electronic Frontier Foundation

Jennifer Lynch
Senior Staff Attorney
Electronic Frontier Foundation

# Attachments

1   NICOLA T. HANNA
    United States Attorney
2   LAWRENCE S. MIDDLETON
    Assistant United States Attorney
3   Chief, Criminal Division
    VICTORIA A. DEGTYAREVA (Cal. Bar No. 284199)
4   Assistant United States Attorney
    OCDETF Section
5       1400 United States Courthouse
       312 North Spring Street
6       Los Angeles, California 90012
       Telephone: (213) 894-7635
7       Facsimile: (213) 894-0142
       E-mail:   Victoria.Degtyareva@usdoj.gov
8
  Attorneys for Plaintiff
9   UNITED STATES OF AMERICA

10               UNITED STATES DISTRICT COURT

11           FOR THE CENTRAL DISTRICT OF CALIFORNIA

12   UNITED STATES OF AMERICA,     No. ED CR 17-222(A)-JGB

13        Plaintiff,        GOVERNMENT'S REPORT ON THE STATUS
                      OF THE CASE AND MOTION TO AMEND
14         v.          THE COURT'S AUGUST 24, 2018 ORDER;
                      DECLARATION OF HSI ASSISTANT
15   SLAVCO IGNJATOV, et al.,     DIRECTOR MATTHEW C. ALLEN

16        Defendants.      Hearing Date: November 5, 2018
                      Hearing Time: 2:00 p.m.
17                      Location: Courtroom of the Hon.
                              Jesus G. Bernal
18

19       Plaintiff United States of America, by and through its counsel

20   of record, the United States Attorney for the Central District of

21   California and Assistant United States Attorney Victoria A.

22   Degtyareva, hereby files its Report on the Status of the Case and

23   Motion to Amend the Court's August 24, 2018 Order (the "Order").

24   Specifically, the government will not appeal the Order and will move

25   to dismiss the charges against defendants Slavco Ignjatov and

26   Valentino Hristovski.  Before the case is dismissed, however, the

27   government respectfully requests that the Court amend the portion of

28

1   its Order stating that the agents' actions created a scenario of

2   significant government misconduct.

3       This Status Report and Motion to Amend is based upon the

4   attached memorandum of points and authorities and the declaration of

5   Homeland Security Investigations Assistant Director Matthew C. Allen,

6   the files and records in this case, and such further evidence and

7   argument as the Court may permit.

8   Dated: September 28, 2018          Respectfully submitted,

9                                      NICOLA T. HANNA
                                       United States Attorney
10
                                       LAWRENCE S. MIDDLETON
11                                     Assistant United States Attorney
                                       Chief, Criminal Division
12

13                                     _____/s/_____
                                       VICTORIA A. DEGTYAREVA
14                                     Assistant United States Attorney

15                                     Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA
16

17

18

19

20

21

22

23

24

25

26

27

28

                                       2

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    INTRODUCTION

The government will not appeal the Court's August 24, 2018 Order granting the motion to suppress filed by defendants Slavco Ignjatov and Valentino Hristovski (Dkt. No. 121), and will move to dismiss the charges as to these two defendants based on the suppression of the principle evidence against them.[1]

Before the case is dismissed, however, the government requests the Court to amend its finding at page 12 of the Order regarding government misconduct.  The government respectfully submits that, under all of the circumstances in this case, including the information set forth in the attached declaration of Homeland Security Investigations ("HSI") Assistant Director Matthew C. Allen regarding HSI policy, the agents' actions do not warrant a finding of misconduct.  The law pertaining to the use of a GPS tracker at the border is a question of first impression in this Circuit and was unsettled at the time the agents placed the tracker in this case; the FBI agent and the LAPD officer consulted with HSI about the law governing installation of a GPS tracker at the international border; the HSI agents accurately conveyed HSI policy to them; and that HSI policy was consistent with the Department of Justice's ("DOJ") litigating position.  In this context, the government submits that

---

[1] Djordje Karac ("Karac") and FNU LNU, also known as "Boss" ("Boss"), are also charged in the First Superseding Indictment.  The government will not move to dismiss the charges as to Karac and Boss because, even without the suppressed evidence, it can prove the case against them.  Agents seized approximately 194 kilograms of cocaine from Karac in March 2017 (where no GPS tracker was used) and text messages, recorded statements by co-conspirators, and testimony from cooperating witnesses confirms Boss's involvement in the March 2017 shipment of cocaine.

the FBI agent and the LAPD officer did not engage in misconduct, and in light of the impact of a misconduct finding on their careers, the government respectfully requests that the Court revise its Order regarding the misconduct findings.[2]

## II.   ARGUMENT

When the GPS tracker was installed in this case, the law regarding application of GPS trackers at the border was not settled. As the Court stated in the Order, "[t]he application of a GPS tracking device at a border appears to be a matter of first impression in this Circuit." (Order at 4.)  The government is also not aware of case law in any other Circuit expressly addressing this issue, and the Supreme Court decision in Carpenter v. United States, 138 S.Ct. 2206 (2018), was issued after the events at issue in this case.  When the agents decided to install the tracker in this case, the law regarding application of a GPS tracker to a commercial vehicle at the international border and subsequent tracking of that vehicle for fewer than 48 hours after entering the United States was not clearly established.  Cf. Brown v. Illinois, 422 U.S. 590, 592 (1975) (officers searched the defendant's apartment and arrested the defendant, all without probable cause and without a warrant, in violation of clearly established law).  In assessing whether a GPS tracker could be installed on the truck at the border, FBI Special Agent Hannah Monroe and LAPD Officer Asatur Mkrtchyan consulted with

---

[2] Based on the evidence before the Court and the government's decision to dismiss this case, the government does not believe that an evidentiary hearing is required for the Court to grant the limited relief which the government seeks in this motion.  If the Court wishes to hear further testimony from any of the relevant witnesses, however, they can be made available to be questioned by the Court.

2

Case 5:17-cr-00222-JGB   Document 125   Filed 09/28/18   Page 5 of 7   Page ID #:1113

1  the Department of Homeland Security ("DHS"), which includes both HSI

2  and Customs and Border Patrol ("CBP").

3      Special Agent Monroe and Officer Mkrtchyan testified that they

4  relied on the guidance of HSI and CBP agents.  Special Agent Monroe

5  testified, "I'm trained as an F.B.I. agent that the border search

6  experts are H.S.I. and C.B.P., and when I have questions about border

7  search and authority that I should defer to them and their expertise,

8  which I did."  (6/25/18 Tr. at 45:2-6.)  Likewise, Officer Mkrtchyan

9  testified that he is not trained on things like border searches,

10  border authority, or applying GPS trackers at the border because as a

11  police officer in Los Angeles, "we don't really work with too many

12  borders.  We rely on our federal partners, such as the Department of

13  Homeland Security, CBP, to assist us on investigations that lead us

14  to the border or at the border."  (7/9/2018 Tr. at 102:8-18.)

15  Although, as the Court noted, "Officer Mkrtchyan testified that in

16  general he understood that a warrant is necessary to install a GPS

17  device," (Order at 12), in this case, because the GPS device was to

18  be installed not in Los Angeles but at the international border,

19  Officer Mkrtchyan relied upon the information provided by federal

20  border agents.

21      Special Agent Monroe consulted with two separate DHS agents,

22  both of whom informed her that under HSI policy a GPS tracker could

23  lawfully be installed on defendant's commercial truck at the border

24  and subsequently monitored without a warrant.  In their declarations,

25  Special Agent Monroe and Officer Mkrtchyan both stated that before

26  defendants entered the United States, they and other agents

27  participated in a conference call with a CBP officer, who told them

28  that: "[B]order agents were authorized to install GPS trackers on any

3

1   vehicle at the border without a warrant so long as the GPS monitoring
2   did not exceed 48 hours, and that the 48-hour rule did not apply to
3   commercial vehicles, such as semi-trucks, which are subject to
4   increased government regulation." (Declaration of Hannah Monroe
5   ("Monroe Decl.") ¶ 14; Declaration of Asatur Mkrtchyan ¶ 6.)

6        Special Agent Monroe did not rely solely on the guidance of
7   this CBP officer. She spoke with an HSI agent, who was assigned to a
8   border district and who confirmed that the CBP officer's guidance was
9   correct. (Monroe Decl. ¶ 14.) It was only after receiving this
10  confirmation that Special Agent Monroe asked the HSI agent to install
11  trackers on defendants' commercial truck at the Canada-United States
12  border. (Id.) Although the Court has concluded that the guidance
13  these agents received was incorrect, the government submits that in
14  seeking guidance from DHS, Special Agent Monroe and Officer Mkrtchyan
15  did not act in bad faith, deliberately, recklessly, or negligently.

16       In addition, Special Agent Monroe testified that the advice she
17  received from the DHS agents was "per H.S.I. policy." (6/25/2018 Tr.
18  at 42:22 to 43:24). As set forth in the attached declaration, the
19  guidance on which Special Agent Monroe and Officer Mkrtchyan relied
20  was, in fact, HSI's policy. (Declaration of HSI Assistant Director
21  Matthew C. Allen ¶¶ 4-5.) Further, that policy is consistent with
22  the litigating position of the Department of Justice ("DOJ").
23  Specifically, the DOJ does not believe that the Fourth Amendment
24  requires a warrant to track a commercial vehicle on the open roads
25  for fewer than 48 hours after entering the United States. The
26  government recognizes and will not appeal this Court's ruling
27  rejecting that position; however, in an area where the law was
28  unsettled and the agents sought and followed the HSI guidance, the

4

government respectfully submits that their actions do not warrant a finding of misconduct, and that a misconduct finding is not necessary to the disposition of the issue. As the Court noted in its Order, when considering whether the attenuation doctrine applies to a particular case, one factor is "the purpose and flagrancy of the official misconduct." (Order at 10, citing Utah v. Strieff, 136 S. Ct. 2056, 2062 (2016).) This factor is not, by itself, dispositive, and the Court need not find that Special Agent Monroe and Officer Mkrtchyan engaged in purposeful or flagrant misconduct in order to find the attenuation doctrine does not apply. The evidence shows that their purpose was not to flout the Fourth Amendment or to circumvent the warrant requirement; rather, they were following HSI guidance. Although the Court found that HSI's guidance and DOJ's litigating position were flawed, the government respectfully submits that Officer Mkrtchyan and Special Agent Monroe should not be found to have engaged in misconduct for relying on such guidance in an unsettled area of law.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court grant the government's motion and amend its August 24, 2018 Order to delete the paragraph on page 12 starting with "Lastly, the Court considers the official misconduct weighs against the government." Alternatively, if the Court is not inclined to strike the paragraph, the government requests that the Court amend the paragraph to state that its finding of "significant government misconduct" was aimed at the government position as a whole, and it was not a finding that Officer Mkrtchyan or Special Agent Monroe acted in bad faith, deliberately, recklessly, or negligently.

5

1  NICOLA T. HANNA
   United States Attorney
2  LAWRENCE S. MIDDLETON
   Assistant United States Attorney
3  Chief, Criminal Division
   VICTORIA A. DEGTYAREVA (Cal. Bar No. 284199)
4  Assistant United States Attorney
   OCDETF Section
5       1400 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-7635
7       Facsimile: (213) 894-0142
        E-mail: Victoria.Degtyareva@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10              **UNITED STATES DISTRICT COURT**

11          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12

13  UNITED STATES OF AMERICA,                )
                                             )
14            Plaintiff,                      )
                                             )
15       vs.                                  )   Case Number: ED CR 17-222(A)-JGB
                                             )
16  SLAVCO IGNJATOV, et al.,                  )   **DECLARATION OF ASSISTANT**
                                             )   **DIRECTOR MATTHEW C. ALLEN**
17            Defendants.                     )
                                             )
18                                           )
                                             )
19                                           )
                                             )
20  _____ )

21

22       I, Matthew C. Allen, declare as follows:

23       1.    I am the Assistant Director (AD) for the Domestic Operations Division within the

24  U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement's

25  (ICE) Homeland Security Investigations (HSI). I have occupied this position since 2018. From

26  2007 to 2008, I was the Deputy Assistant Director (DAD) of the Narcotics, Financial and Public

27  Safety Division. From 2006 to 2007 I was the DAD and acting DAD for the Critical Infrastructure

28  and Fraud Division in the ICE, Office of Investigations. Before that position, I served as

1  Headquarters Unit Chief for the Contraband Smuggling Unit and previously served as the

2  Resident Agent in Charge in Nogales, Arizona, where I was responsible for managing ICE's

3  investigative activities within the Nogales geographic area.

4      2.    In my current position, I am responsible for managing, directing and coordinating

5  all investigative activities of the various domestic field offices. These responsibilities include

6  ensuring implementation and adherence to policies, procedures, guidelines, and directives

7  governing investigative activities. The Domestic Operations Division ensures the implementation

8  of investigative activities and programs in conformance with HSI's national priorities. The

9  Division is also responsible for monitoring and evaluating productivity of the various field offices

10  and ensuring prompt communication of significant activity from field components to appropriate

11  headquarters management.

12      3.    I am aware of the proceedings and underlying investigation associated with the

13  above-captioned case. I submit this declaration to describe HSI's longstanding practices and

14  procedures on the use of GPS tracking devices in HSI investigations. The statements I make

15  herein are based on my personal knowledge and on facts and information provided to me in the

16  course of my official duties.

17  

18      4.    HSI exercises its border-search authority for the purpose of protecting national

19  security and revenue of the United States.  Pursuant to this authority, it is HSI's policy that a

20  customs officer may install a GPS tracking device on a vehicle at the United States border without

21  a warrant or individualized suspicion. HSI limits warrantless GPS monitoring to 48 hours, with

22  the exception of airplanes, commercial vehicles, and semi-tractor trailers, which have a

23  significantly reduced expectation of privacy in the location of their vehicles. It is HSI's position

24  that such policy is consistent with the U.S. Supreme Court's decisions in *United States v. Jones*,

25  565 U.S. 400 (2012), and *United States v. Flores-Montano*, 541 U.S. 149 (2004).

26      5.    HSI's position on the use of GPS tracking devices was developed, in consultation

27  with the Department of Justice, in response to the 2012 *Jones* decision, and is found in HSI

28  

DECLARATION OF ASSISTANT DIRECTOR MATTHEW C. ALLEN
CASE NO. 17-cr-00222-JGB                PAGE 2 of 3

1    policies and procedures, as well as trainings regularly provided to HSI personnel, all of which
2    were in place throughout the pendency of this case and the underlying investigation.
3
     I declare under penalty of perjury under the laws of the United States that the foregoing is true
4
     and correct and that this declaration was executed on September 24, 2018.
5
6
7                                          _____
8                                          Matthew C. Allen
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DECLARATION OF ASSISTANT DIRECTOR MATTHEW C. ALLEN
CASE NO. 17-cr-00222-JGB                                              PAGE 3 of 3

*Office of Information Governance and Privacy*

**U.S. Department of Homeland Security**
500 12th St., SW
Washington, D.C. 20536



**U.S. Immigration
and Customs
Enforcement**

March 11, 2019

Michael Rosenbloom
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109

### RE: ICE FOIA Case Number 2019-ICFO-21210

Dear Mr. Rosenbloom:

This letter is the final response to your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated November 05, 2018. You have requested copies of the following records:

any and all records created or received by HSI or CBP between January 3, 2012 (the date of the Supreme Court's opinion in Jones) and the date of this request, concerning:
• Policies and/or procedures regarding the use of GPS tracking devices on vehicles crossing the border.
• Training manuals and/or training materials on the use of GPS tracking devices on vehicles crossing the border

ICE has considered your request under the FOIA, 5 U.S.C. § 552.

A search of the ICE Homeland Security Investigations (HSI) for records responsive to your request produced 3 pages that are responsive to your request. After review of those documents, I have determined that 3 pages will be withheld in their entirety pursuant to Exemption 7(E) of the FOIA as described below.

ICE has applied FOIA Exemption 7(E) to protect from disclosure law enforcement techniques and equipment contained within the document.

**FOIA Exemption 7(E)** protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. I have determined that disclosure of certain law enforcement sensitive information contained within the

responsive records could reasonably be expected to risk circumvention of the law. Additionally, the techniques and procedures at issue are not well known to the public.

You have a right to appeal the above withholding determination. Should you wish to do so, you must send your appeal and a copy of this letter, within 90 days of the date of this letter following the procedures outlined in the DHS FOIA regulations at 6 C.F.R. Part 5 § 5.8, to:

> U.S. Immigration and Customs Enforcement
> Office of the Principal Legal Advisor
> U.S. Department of Homeland Security
> 500 12th Street, S.W., Mail Stop 5900
> Washington, D.C. 20536-5900

Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

Provisions of FOIA allow DHS to charge for processing fees, up to \$25, unless you seek a waiver of fees. In this instance, because the cost is below the \$25 minimum, there is no charge.

If you need any further assistance or would like to discuss any aspect of your request, please contact the FOIA office and refer to FOIA case number **2019-ICFO-21210**. You may send an e-mail to ice-foia@ice.dhs.gov, call toll free (866) 633-1182, or you may contact our FOIA Public Liaison, Fernando Pineiro, in the same manner. Additionally, you have a right to right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

mepwOain

Catrina M. Pavlik-Keenan
FOIA Officer