**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ELECTRONIC FRONTIER FOUNDATION,

          Plaintiff,

   v.

DEPARTMENT OF HOMELAND SECURITY,

          Defendant.

Civil Case No. 19-02578-TFH

---

**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Electronic Frontier Foundation cross-moves for summary judgment with respect to Defendant's continued withholding of records responsive to its Freedom of Information Act request pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7.

Plaintiff respectfully refers the Court to the accompanying memorandum of points and authorities in support of this cross-motion, response to Defendant's statement of material facts not in dispute and Plaintiff's statement of material facts not in dispute, and the Declaration of Saira A. Hussain. A proposed order is also attached.

Dated: February 5, 2021

Respectfully Submitted,

*/s/ David L. Sobel*
DAVID L. SOBEL
D.C. Bar No. 360418
Electronic Frontier Foundation
5335 Wisconsin Avenue, N.W.
Suite 640
Washington, DC  20015
(202) 246-6180

SAIRA HUSSAIN (admitted in CA)
JENNIFER LYNCH (admitted in CA)
Electronic Frontier Foundation

815 Eddy Street
San Francisco, CA 94109
(415) 436-9333

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELECTRONIC FRONTIER FOUNDATION,

Plaintiff,

v.

Civil Case No. 19-02578-TFH

DEPARTMENT OF HOMELAND SECURITY,

Defendant.

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

                                                                              **Page**

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 2

    I.    *United States v. Ignjatov* ............................................................................ 2

    II.   EFF's FOIA Requests ................................................................................... 4

ARGUMENT SUMMARY ........................................................................................ 4

ARGUMENT ............................................................................................................. 7

  I.   FOIA ESTABLISHES A PRESUMPTION OF DISCLOSURE, AND THE
       GOVERNMENT BEARS THE BURDEN OF DEMONSTRATING THAT
       WITHHELD INFORMATION IS CLEARLY EXEMPT. ............................... 7

  II.  CBP HAS FAILED TO CONDUCT AN ADEQUATE SEARCH. ................... 9

  III. DEFENDANT HAS IMPROPERLY WITHHELD RECORDS UNDER
       EXEMPTION 5 ............................................................................................ 11

       A.    Defendant Has Improperly Withheld Records Under the Deliberative
              Process Privilege ............................................................................... 12

            1.    Defendant Has Failed to Satisfy the Heightened Specificity
                 Required to Withhold Records Under the Deliberative Process
                 Privilege ................................................................................. 13

            2.    Defendant Has Withheld Records that Constitute Final Agency
                 Positions ................................................................................. 14

            3.    Defendant Has Withheld Records that Contain Factual
                 Material .................................................................................. 15

        B.    ICE Has Improperly Withheld Records Under the Attorney Work
              Product Privilege. .............................................................................. 16

        C.    Defendant Has Improperly Withheld Records Under the Attorney-
              Client Privilege. ................................................................................ 18

            1.    Defendant Has Withheld Records that Constitute Agency
                 Policy. .................................................................................... 19

2.      Defendant Has Waived Attorney-Client Privilege in Portions of the Withheld Records. ............................................................................ 20

IV.  DEFENDANT HAS IMPROPERLY WITHHELD RECORDS UNDER EXEMPTION 7(E) .................................................................................... 21

V.  DEFENDANT HAS FAILED TO SEGREGATE AND RELEASE NON-EXEMPT MATERIAL ............................................................................ 23

CONCLUSION ..................................................................................................... 24

# **TABLE OF AUTHORITIES**

**Pages**

## **CASES**

*Access Reports v. DOJ,*
  926 F.2d 1192  (D.C. Cir. 1991)..........................................................................14

*ACLU v. Dep't of Defense,*
  628 F.3d 612 (D.C. Cir. 2011)..............................................................................21

*ACLU v. DOJ,*
  880 F.3d 473 (9th Cir. 2018)................................................................................18

*Aguiar v. DEA,*
  865 F.3d 730 (D.C. Cir. 2017)..............................................................................10

*Albuquerque Pub. Co. v. DOJ,*
  726 F. Supp. 851 (D.D.C. 1989)....................................................................22, 23

*Animal Legal Def. Fund, Inc. v. Dep't of Air Force,*
  44 F. Supp. 2d 295 (D.D.C. 1999).......................................................................13

*Arthur Andersen & Co. v. IRS,*
  679 F.2d 254 (D.C. Cir. 1982)..............................................................................15

*Birch v. U.S. Postal Serv.,*
  803 F.2d 1206 (D.C. Cir. 1986).............................................................................8

*Celotex Corp. v. Catrett,*
  477 U.S. 317  (1986)..............................................................................................8

*\*Coastal States Gas Corp. v. Dep't of Energy,*
  617 F.2d 854 (D.C. Cir. 1980).......................................................13, 14, 16, 19

*Cottone v. Reno,*
  193 F.3d 550 (D.C. Cir. 1999)..............................................................................17

*Defenders of Wildlife v. Dep't of Agric.,*
  311 F. Supp. 2d 44 (D.D.C. 2004)........................................................................15

*Dep't of Air Force v. Rose,*
  425 U.S. 352 (1976)................................................................................................7

*DOJ v. Reporters Comm. for Freedom of the Press,*
  489 U.S. 749 (1989)...........................................................................................7, 8

*DOJ v. Tax Analysts,*
  492 U.S. 136 (1989)................................................................................................8

*Fisher v. United States,*
    425 U.S. 391 (1976)................................................................19

*Harrison v. EOUSA,*
    377 F. Supp. 2d 141 (D.D.C. 2005).....................................8

*Jaffe v. CIA,*
    573 F. Supp. 377 (D.D.C. 1983)..........................................22

*Johnson v. Exec. Office for U.S. Attorneys,*
    310 F.3d 771 (D.C. Cir. 2002)............................................24

*Jordan v. DOJ,*
    591 F.2d 753 (D.C. Cir. 1978)............................................12

*Judicial Watch v. Dep't of Homeland Sec.,*
    857 F. Supp. 2d 129 (D.D.C. 2012).....................................10

*Judicial Watch v. U.S. Postal Serv.,*
    297 F. Supp. 2d 252 (D.D.C. 2004).....................................13

*\*Mead Data Cent., Inc. v. Dep't of the Air Force,*
    566 F.2d 242 (D.C. Cir. 1977)............................... 8, 19, 23, 24

*Morley v. CIA,*
    508 F.3d 1108 (D.C. Cir. 2007)......................................10, 15

*Nat'l Assoc. of Criminal Def. Lawyers v. DOJ Exec. Office for U.S. Attorneys,*
    844 F.3d 246 (D.C. Cir. 2016)............................................18

*Nat'l Council of La Raza v. DOJ,*
    411 F.3d 350 (2d Cir. 2005)...............................................20

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978)..........................................................7, 8

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975)......................................................12, 14

*\*Oglesby v. Dep't of Army,*
    920 F.2d 57 (D.C. Cir. 1990).............................................9, 10

*Paisley v. CIA,*
    712 F.2d 686 (D.C. Cir. 1983)............................................15

*Petroleum Info. Corp. v. Dep't of Interior,*
    976 F.2d 1429 (D.C. Cir. 1992)..........................................13

*Public Citizen, Inc. v. Dep't of State,*
    100 F. Supp. 2d 10 (D.D.C. 2000).......................................17

*Quarles v. Dep't of Navy*,
    893 F.2d 390 (D.C. Cir. 1990)................................................. 15, 16

*Reporters Comm. for Freedom of the Press v. FBI*,
    877 F.3d 399 (D.C. Cir. 2017)................................................. 10

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991)............................................... 16

*Sterling Drug, Inc. v. FTC*,
    450 F.2d 698 (D.C. Cir. 1971)................................................. 14

*Tax Analysts v. IRS*,
    117 F.3d 607 (D.C. Cir. 1997)................................................. 20

*Truitt v. Dep't of State*,
    897 F.2d 540 (D.C. Cir. 1990)................................................. 9

*United States v. Ignjatov*,
    No. 5:17-cr-00222-JGB (C.D. Cal.)........................................ *passim*

*United States v. Jones*,
    565 U.S. 400 (2012)......................................................... *passim*

*United States v. Senese*,
    No. 18-cr-60076-BB (S.D. Fla.)............................... 1, 17, 21, 23

*Valencia-Lucena v. U.S. Coast Guard*,
    180 F.3d 321 (D.C. Cir. 1999)............................................. 9, 11

*Weisberg v. DOJ*,
    627 F.2d 365, 371 (D.C. Cir. 1980)....................................... 10

*Weisberg v. DOJ*,
    705 F.2d 1344 (D.C. Cir. 1983)............................................. 8

## STATUTES

5 U.S.C. § 552 ......................................................................... *passim*

## RULES

Fed. R. Civ. P. 26(b) ............................................................... 16

Fed. R. Civ. P. 56(a) ............................................................... 8

## OTHER AUTHORITIES

Cyrus Farivar, "Feds to judge: We still think we can put GPS trackers on cars entering US,"
    Ars Technica (Oct. 6, 2018) ............................................... 4

Kim Zetter, *Busted! Two New Fed GPS Trackers Found on SUV*, Wired (Nov. 8, 2011)........... 22

Kim Zetter, *Caught Spying on Student, FBI Demands GPS Tracker Back*, Wired (Oct. 7, 2010).............................................................................................................22

Reddit, "Does this mean the FBI is after us?" (Oct. 3, 2010) ....................................................22

Tim Cushing, "DHS Investigators Argue the Border Warrant Exception Covers Searches Performed Miles from the Border," TechDirt (Oct. 11, 2018)..................................................4

## <u>INTRODUCTION</u>

This is a case involving the government's refusal to reveal to the public how and when it uses Global Positioning System ("GPS") tracking devices at the United States border. Through two Freedom of Information Act ("FOIA") requests, Plaintiff Electronic Frontier Foundation ("EFF") seeks records from Defendant U.S. Department of Homeland Security ("DHS")—more specifically from component agencies U.S. Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP")—documenting policies, procedures, training manuals, and training materials regarding the use of GPS tracking devices on vehicles crossing the border.

EFF is a member-supported, non-profit legal organization that litigates to protect privacy rights in the digital age. As part of its work, EFF frequently files and litigates FOIA requests to learn more about the conduct of domestic law enforcement surveillance and programs.

Documents disclosed in this case and in two criminal cases, *United States v. Ignjatov* and *United States v. Senese*, demonstrate that ICE and CBP repeatedly have attached GPS tracking devices to vehicles at the border without a warrant. *See Ignjatov*, No. 5:17-cr-00222-JGB (C.D. Cal.); *Senese*, No. 18-cr-60076-BB (S.D. Fla.). The documents also demonstrate that despite the government's litigation position that such warrantless searches are permissible under the border search exception to the Fourth Amendment, courts repeatedly have rejected this argument under the rationale of the Supreme Court's decision in *United States v. Jones*, 565 U.S. 400 (2012), which held that the installation of a GPS tracking device on a suspect's vehicle constitutes a search under the Fourth Amendment. *See Ignjatov*, ECF No. 121, No. 5:17-cr-00222-JGB; *Senese*, ECF No. 37, No. 18-cr-60076-BB.

Although much of this debate has played out publicly, both in courts and in the media, ICE and CBP now refuse to provide *any* records reflecting substantive policies, procedures,

training manuals, and training materials on their use of GPS tracking devices on vehicles crossing the border—effectively foreclosing public knowledge about whether or not the government is complying with the Fourth Amendment. Defendant has failed to meet its burden of proof for withholding records and Plaintiff now moves the Court to grant Plaintiff's motion for summary judgment, and deny Defendant's motion for summary judgment.

## **BACKGROUND**

### I.    *United States v. Ignjatov*

Long after the Supreme Court's landmark decision in *Jones*, the American public learned in 2018 about Defendant's continued warrantless use of GPS tracking devices on vehicles crossing the border. Media reported on *Ignjatov*, where the FBI and Los Angeles Police Department ("LAPD") suspected defendants Slavco Ignjatov and Valentino Hristovski of transporting drugs into the United States. *Ignjatov*, ECF No. 121, No. 5:17-cr-00222-JGB, at 1–2. On October 20, 2017, defendants entered the United States from Canada driving a tractor-trailer truck. *Id.* at 2. At the port of entry in Port Huron, Michigan, border agents attached two GPS tracking devices, without a warrant, to defendants' truck and trailer. *Id.* The government then used a program that recorded the truck's GPS coordinates at approximately 15 minutes intervals as the truck traveled over 2,000 miles from the port of entry to San Bernardino, California. *Id.* at 2–3. Investigators tracked the GPS devices until around 4:45 pm on October 22. *Id.* at 3. Defendants ultimately were arrested for conspiracy to traffic cocaine. *Id.*

On August 24, 2018, the district court issued an order granting defendants' motion to suppress, holding that the government's warrantless attachment of the GPS tracking devices and subsequent monitoring of their truck violated their Fourth Amendment rights. *Ignjatov*, ECF No. 121, No. 5:17-cr-00222-JGB. The district court relied on the Supreme Court's precedent in *Jones* in rejecting the government's assertion that installation of the GPS devices was permissible

under the border search exception to the Fourth Amendment. *Id.* at 4–9. The district court also rejected the government's claims of the attenuation and inevitable discovery exceptions to the exclusionary rule, finding that the government's actions comprised "official misconduct" and concluding that the investigators' "decision not to seek legal guidance or obtain a warrant, coupled with the almost two-day long use of the GPS devices . . . creates a scenario of significant government misconduct." *Id.* at 9–12.

On September 28, 2018, the government filed a motion to amend the court's decision to remove mention of its finding of "significant government misconduct." *Ignjatov,* ECF No. 125, No. 5:17-cr-00222-JGB.[1] In support of its motion, the government submitted a declaration from an ICE Homeland Security Investigations ("HSI") Assistant Director, who stated that it was HSI's longstanding policy that a border agent could install a GPS device on a vehicle at the U.S. border without a warrant or individualized suspicion, and that HSI limits monitoring of such devices to 48 hours, with the exception of airplanes, commercial vehicles, and semi-tractor trailers. Declaration of Saira A. Hussain ("Hussain Decl."), Exhibit 1, at ¶¶ 3–4. The HSI Assistant Director further stated that HSI believed that its policy was consistent with and developed in response to *Jones*, and that this position could be "found in HSI's policies and procedures, as well as trainings regularly provided to HSI personnel." *Id.* at ¶¶ 4–5. The government also pointed to conversations between FBI and LAPD investigators and a CBP agent, who told them that border agents could install a GPS tracking device on a vehicle at the border as long as the monitoring did not exceed 48 hours, but that the 48-hour rule did not apply to commercial vehicles such as semi-trucks. *Ignjatov*, ECF No. 125, No. 5:17-cr-00222-JGB, at

---

[1] The government conceded that it would not appeal the district court's order and would dismiss charges against the defendants. *Id.* at *3.

*5–*6. The investigators also consulted with an HSI agent, who confirmed the CBP agent's

guidance was supposedly accurate. *Id.* at *6.

Both the *Ignjatov* district court order granting defendants' motion to suppress and the

government's motion to amend that order garnered significant press attention.[2]

## II.     EFF's FOIA Requests

Plaintiff incorporates its Response to Defendant's Statement of Material Facts Not in

Dispute ("Pl. Statement of Facts") and the declarations and exhibits referenced therein, filed

contemporaneously with this Memorandum, to describe Plaintiff's FOIA requests and

Defendant's search for, review of, and processing of responsive records.

## ARGUMENT SUMMARY

This Court should grant summary judgment to Plaintiff because Defendant has refused to

release a single record that discusses in substance ICE and CBP's policies, procedures, training

manuals, or training materials regarding the use of GPS tracking devices at the border, and

Defendant has failed to demonstrate that CBP conducted an adequate search or that Exemptions

5 and 7(E) apply to the withheld records.

Defendant is not entitled to summary judgment because CBP failed to conduct an

adequate search. Contrary to the requirements imposed by the cases in this Circuit, the submitted

declaration from Patrick A. Howard, a Branch Chief in the FOIA Division of CBP, fails to

---

[2] *See, e.g.*, Cyrus Farivar, "Feds to judge: We still think we can put GPS trackers on cars entering US," Ars Technica (Oct. 6, 2018), https://arstechnica.com/tech-policy/2018/10/feds-to-judge-we-still-think-we-can-put-gps-trackers-on-cars-entering-us/; Tim Cushing, "DHS Investigators Argue the Border Warrant Exception Covers Searches Performed Miles from the Border," TechDirt (Oct. 11, 2018), https://www.techdirt.com/articles/20181009/10483840803/dhs-investigators-argue-border-warrant-exception-covers-searches-performed-miles-border.shtml.

identify the files or records CBP searched, the search terms used, or the agency personnel tasked with conducting the search. This demonstrates that CBP conducted an insufficient search.

Under Exemption 5, Defendant may not invoke the deliberative process privilege because it has provided minimal information regarding certain withheld records in ICE's *Vaughn* index and ICE and CBP's affidavits, and thus cannot specify the deliberative process involved and the role played by the withheld documents in that process. Moreover, the withheld records constitute final agency positions since they consist of guidance and training documents. The agencies also have improperly withheld factual material, since large swaths of text are redacted, including case summaries, legal definitions, and explanations of court opinions. In addition, ICE may not claim the work product privilege because most of the records were not prepared with litigation in mind, and rather were created in the "ordinary course of business" to train agency personnel on ICE's policies and procedures. Even if the records at issue would otherwise enjoy this protection, ICE has waived the privilege as a result of revealing its legal positions and arguments in court filings, such as in *Ignjatov* and *Senese*. Finally, Defendant may not withhold records pursuant to the attorney-client privilege. The records at issue constitute formal agency policy since they correspond with either agency policies and procedures or training materials. Moreover, even if the privilege applies, Defendant has waived it because of its litigation positions in cases such as *Ignjatov*, which describes with specificity ICE and CBP's policies and procedures regarding the use of GPS tracking devices at the border.

Defendant has failed to justify withholding policies and procedures, training manuals, and training materials under Exemption 7(E) because the techniques and procedures surrounding law enforcement's use of GPS tracking devices are well-known and do not create a risk of circumvention of the law.

Finally, Defendant has failed to segregate and disclose non-exempt material, which is made evident by over 350 pages of withholdings, most of which are full or near-full redactions of text.

Plaintiff's challenge to ICE and CBP's withholdings is limited to the issues described above, which are discussed in more detail below. Thus, EFF does not challenge the following:

- The adequacy of ICE's search of records that it conducted as a result of EFF's request. Memorandum in Support of Defendant's Motion for Summary Judgment ("Def. Mot.") at 5–6; Pineiro Decl. at ¶¶ 27–33.

- ICE's withholding of draft documents that may reveal the agency's pre-decisional and deliberative process under Exemption 5, for which there is a corresponding final document that is disclosed. Def. Mot. at 12–13.

- ICE's withholding of email communications that engage in deliberative discussions regarding a draft agency decision under Exemption 5.[3] Def. Mot. at 12–13.

- ICE and CBP's global withholding of identifying information under Exemptions 6 and 7(C). Def. Mot. at 14–16.

- ICE and CBP's withholding of any information pertaining to specific locations or ports of entry where border agents may utilize procedures and techniques involving GPS tracking devices under Exemption 7(E). Def. Mot. at 17–18; Pineiro Decl. at ¶ 54; Howard Decl. at ¶¶ 44–45.

---

[3] Plaintiff challenges the withholding of one email communication that discusses policy that has been "consistently applied and communicated to agents," but the restatement of the policy itself is redacted. *See* ICE *Vaughn* Index at 37; Bates pages 2019-ICLI-00060 893–94. This email clearly identifies the agency's final position and may not be withheld under the deliberative process privilege. *See infra* Part III.A.2.

Plaintiff thus narrows the issues in this case, in addition to the adequacy of CBP's search, to the following three categories of documents:

- 6 records from ICE and 1 record from CBP identifying policies and/or procedures regarding the use of GPS tracking devices on vehicles crossing the border. *See* ICE *Vaughn* Index at 18, 22, 35, 37, 40, & 41; Howard Decl. at ¶ 32.

- 3 records identifying ICE's training manuals regarding the use of GPS tracking devices on vehicles crossing the border. *See* ICE *Vaughn* Index at 42, 43, & 44.

- 8 records identifying ICE's training materials regarding the use of GPS tracking devices on vehicles crossing the border. *See* ICE *Vaughn* Index at 5, 7, 8, 9, 10, 17, 23, & 24.

## **ARGUMENT**

**I.     FOIA Establishes a Presumption of Disclosure, and the Government Bears the Burden of Demonstrating that Withheld Information Is Clearly Exempt.**

The Freedom of Information Act safeguards the American public's right to know "what their government is up to." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). The statute was enacted "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotations and citation omitted). FOIA's central aim is "to ensure an informed citizenry, vital to the functioning of a democratic society, need to check against corruption and hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Accordingly, "disclosure, not secrecy, is the dominant objective" of FOIA. *Rose*, 425 U.S. at 361.

FOIA requires disclosure of all agency records when requested by the public unless the records fall within one of nine exemptions. *See* 5 U.S.C. § 552(b). If information sought does not

fit squarely into one of the nine categories, the law requires federal agencies to disclose the information. *Robbins Tire*, 437 U.S. at 221. The exemptions "have been consistently given a narrow compass" and agency records that "do not fall within one of the exemptions are improperly withheld." *DOJ v. Tax Analysts*, 492 U.S. 136, 151 (1989) (internal quotations omitted).

Disputes involving the propriety of agency withholdings are commonly resolved on motions for summary judgment. *Harrison v. EOUSA*, 377 F. Supp. 2d 141, 145 (D.D.C. 2005). A court reviews the government's decision to withhold records *de novo*, and the government bears the burden of proving records have been properly withheld. 5 U.S.C. § 552(a)(4)(B); *DOJ v. Reporters Comm.*, 489 U.S. at 755. "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action.'" *DOJ v. Reporters Comm.*, 289 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). When claiming an exemption, the agency must provide a "'relatively detailed justification' for assertion of an exemption and must demonstrate to a reviewing court that records are clearly exempt." *Birch v. U.S. Postal Serv.*, 803 F.2d 1206, 1209 (D.C. Cir. 1986) (citing *Mead Data Ctr., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).

Summary judgment is proper when the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The underlying facts are viewed "in the light most favorable to the FOIA requester." *Weisberg v. DOJ*, 705 F.2d 1344, 1350 (D.C. Cir. 1983).

**II.      CBP Has Failed to Conduct an Adequate Search.**

Under FOIA, an agency is deemed to have conducted an adequate search "if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). The agency need not search "every record system." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). However, an agency must demonstrate it made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id.* It can do so by submitting "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.* The government fails to carry its burden "if a review of the record raises substantial doubt" as to the adequacy of the search, "particularly in view of well defined requests and positive indications of overlooked materials." *Valencia-Lucena*, 180 F.3d at 326 (citations and quotations omitted).

Defendant relies on the Howard declaration to describe CBP's search in response to Plaintiff's FOIA request. Howard Decl. at ¶¶ 17–25. CBP's FOIA Division sent a copy of the request to the Office of Field Operations ("OFO"), United States Border Patrol, and Air and Marine Operations and "requested that each office conduct a search for records responsive to the request and advise the FOIA Division of the results." *Id.* at ¶ 17. Without providing specifics, the declaration states that the "searches included consultations with relevant subject-matter experts and field personnel who . . . were expected to be familiar with any policies, procedures, or training materials or manuals related to the use of GPS tracking devices on vehicles crossing the border." *Id.* at ¶ 19. This yielded no responsive records. *Id.* CBP then forwarded the FOIA request to the 18 OFO Field Offices, requesting that the Field Office provide "any information

you have regarding the use or placement of GPS tracking devices." *Id.* at ¶ 23. In response "each geographic Field Office conducted a search for records, including a search for electronic files." *Id.* at ¶ 24. In all, OFO's Field Offices identified 49 records, 45 of which were deemed to be nonresponsive, 1 of which was responsive but withheld in full, and 3 of which were referred to ICE. *Id.* at ¶ 25.

The CBP declaration fails to "set[] forth the search terms and the type of search performed" with any level of specificity. *See Oglesby*, 920 F.2d at 68. "[A]n affidavit containing 'no information about the search strategies for the [agency] component charged with responding to [a] FOIA request' and providing no 'indication of what each [component's] search specifically yielded' is inadequate to carry the government's summary-judgment burden." *Reporters Comm. for Freedom of the Press v. FBI*, 877 F.3d 399 (D.C. Cir. 2017) (quoting *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007)). Courts within this circuit repeatedly have held inadequate searches that lacked specificity on which files were searched, how those files were searched, and which employees conducted the search. *See, e.g., id.* (finding inadequate a search where declarations were silent as to files or record systems searched and how such searches were conducted, including search terms used to identify electronically stored information); *Aguiar v. DEA*, 865 F.3d 730, 738–39 (D.C. Cir. 2017) (deeming insufficient an affidavit identifying agency offices "tasked with conducting a search" but not describing "how [the offices] searched within those files"); *Judicial Watch v. Dep't of Homeland Sec.*, 857 F. Supp. 2d 129, 140 (D.D.C. 2012) (declaring inadequate a search that "omit[] necessary details" such as "who conducted the search, how it was conducted, or what search terms the office used"); *Weisberg v. DOJ*, 627 F.2d 365, 371 (D.C. Cir. 1980) (finding insufficient an affidavit that failed to "denote which files were searched or by whom, . . . reflect any systematic approach to document

location, . . . [or] provide information specific enough to enable [a plaintiff] to challenge the procedures utilized").

Here, the Howard declaration is silent as to any files or record systems examined in connection with the search; how the search was conducted, including relevant search terms; or any specific OFO personnel within each Field Office that that were tasked with conducting the search. Ultimately, the searches yielded only one document that originated within the agency, which it withheld in full. Howard Decl. at ¶ 25. This is especially concerning because the materials released during the course of this lawsuit identify at least two recent federal prosecutions where CBP agents attached warrantless GPS tracking devices to vehicles at the border, which were then remotely monitored and generated evidence used against the defendants. Pl. Statement of Facts at ¶¶ 4–5, 15; *see also id.* at ¶ 10 (identifying discussion between investigators and CBP agent where agent affirmed existence of a policy that allows agents to use warrantless GPS tracking devices on vehicles at the border). These "positive indications of overlooked materials" point to CBP policies, procedures, training manuals, and training materials related to the use of GPS tracking devices at the border that remain undisclosed in this case due to an inadequate search. *See Valencia-Lucena*, 180 F.3d at 326 (citations and quotations omitted).

In sum, because of CBP's lack of specificity in its description of the files and records searched, the search terms used, and the agency personnel tasked with conducting the search, the agency has conducted an inadequate search. Thus, Defendant is not entitled to summary judgment.

## III.   Defendant Has Improperly Withheld Records Under Exemption 5.

Of the records at issue, ICE has withheld over 350 pages under Exemption 5, claiming these documents are protected by deliberative process privilege, attorney work product privilege,

and attorney-client privilege. CBP has withheld 3 pages of records, invoking Exemption 5's deliberative process and attorney-client privileges.

Exemption 5 provides a narrow exception for "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). The exemption covers records that would be "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975). Defendant has failed to demonstrate that the withheld records fall into one of the narrow privileges available under Exemption 5. Thus, as set forth below, Defendant has failed to meet its burden and the records must be disclosed.

## A.   Defendant Has Improperly Withheld Records Under the Deliberative Process Privilege.

ICE has withheld 4 records and CBP has withheld 1 record pursuant to the deliberative process privilege. *See* ICE *Vaughn* Index at 7, 37, 40, & 41; Howard Decl. at ¶¶ 31, 34. Because the agencies' *Vaughn* submission and affidavits lack specificity, and because several of their records are final opinions or contain purely factual information, the records must be released.

The deliberative process privilege protects records that reflect the "opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears*, 421 U.S. at 150 (internal citations omitted). An agency may withhold records pursuant to deliberative process privilege only if the documents are both: (1) "predecisional" or "antecedent to the adoption of an agency policy," and (2) "deliberative" meaning "it must actually be related to the process by which policies are formulated." *Jordan v. DOJ*, 591 F.2d 753, 774 (D.C. Cir. 1978).

12

1.       ***Defendant Has Failed to Satisfy the Heightened Specificity Required to Withhold Records Under the Deliberative Process Privilege.***

When agencies claim deliberative process privilege, there is particular need for specificity in their *Vaughn* submissions and accompanying affidavits. *Animal Legal Def. Fund, Inc. v. Dep't of Air Force*, 44 F. Supp. 2d 295, 299 (D.D.C. 1999) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980)). The "first step" in determining whether a document is properly withheld as deliberative under Exemption 5 "is to examine the context in which the materials are used." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (internal citations and quotations omitted). "Without a sufficiently specific affidavit or *Vaughn* Index, a court cannot decide, one way or the other, a deliberative process privilege claim." *Judicial Watch v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 260 (D.D.C. 2004) (citations omitted).

Here, Defendant has failed to meet this standard. To satisfy Defendant's burden, ICE and CBP must identify "what deliberative process is involved," and "the role played by the documents at issue in the course of that process." *Coastal States,* 617 F.2d at 868. CBP has provided minimal information in its affidavit, stating that the withheld email thread consists of "communications made for the purpose of providing legal advice," and "procedures for using certain law enforcement techniques," but identify neither the deliberative process nor the role the documents played in that process. *See* Howard Decl. at ¶ 32. ICE, too, has failed to do this for several of the records for which it claimed the deliberative process privilege. *See generally* ICE *Vaughn* Index. This failure to identify the deliberative process and the role the documents played in that context, combined with full or near-full redactions, make it difficult for Plaintiff to determine whether ICE has withheld records properly under the privilege.

13

### 2. *Defendant Has Withheld Records that Constitute Final Agency Positions*.

The deliberative process privilege does not extend to "agency policy actually adopted," which constitute the "working law" of the agency. *Sears*, 421 U.S. at 152–53. Agencies are "required to disclose 'orders and interpretations which actually applies to cases before it' in order to prevent the development of 'secret law.'" *Coastal States*, 617 F.2d at 867–68 (quoting *Sterling Drug, Inc. v. FTC*, 450 F.2d 698, 708 (D.C. Cir. 1971)). Even if a document is predecisional at the time it is prepared, the document "can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Id.* at 866.

Here, both CPB and ICE have failed to identify a specific decision to which many of the documents at issue preceded and contributed. Thus, the records should be treated as the final agency positions and should not be withheld under the deliberative process privilege.

For example, ICE has withheld two undated memoranda related to the application of *Jones* to agency investigations involving GPS devices, and has not identified a corresponding final version. ICE *Vaughn* Index at 40 & 41. These memos are not predecisional or deliberative, but rather reflect ICE's final position particularly because of the agency's admission in *Ignjatov* that it developed its position on GPS tracking devices in response to *Jones*. *See* Hussain Decl., Exhibit 1, at ¶ 5. Further, ICE acknowledges these documents were from a senior Office of the Principal Legal Advisor ("OPLA") attorney to OPLA field attorneys and their client, indicating they likely were guidance to these agency personnel. *See Access Reports v. DOJ*, 926 F.2d 1192,1195 (D.C. Cir. 1991) (observing that a document "moving from senior to junior is far more likely to manifest decision making authority and to be the denouement of the decision-making than part of its give-and-take") (internal citations omitted).

ICE argues that the aforementioned documents were "drafts," but "designation of a document as a 'draft' does not automatically trigger proper withholding[.]" *Defenders of Wildlife v. Dep't of Agric.*, 311 F. Supp. 2d 44, 58 (D.D.C. 2004); *see also Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257 (D.C. Cir. 1982) ("*Coastal States* forecloses the Agency's argument that any document identified as a 'draft' is *per se* exempt"). In the absence of specificity in its *Vaughn* index, or a final agency decision or record to which these "drafts" contributed, Defendant has improperly withheld these documents under the deliberative process privilege.

Finally, ICE has withheld an email thread that the agency characterizes as "new [U.S. Attorney's Office] policy on vehicle trackers between an Assistant United States Attorney, OPLA attorneys and clients." *See* ICE *Vaughn* Index at 37. The earliest email in the thread states that the officials have communicated with AUSAs to ensure their "policy is consistently applied and communicated to agents," but the restatement of the policy itself is redacted. Bates pages 2019-ICLI-00060 893–94. This email clearly identifies the agency's final position and may not be withheld under the deliberative process privilege.

### 3. Defendant Has Withheld Records that Contain Factual Material.

"Factual material that does not reveal the deliberative process is not protected by this exemption" and thus may not be withheld. *Morley*, 508 F.3d at 1127 (quoting *Paisley v. CIA*, 712 F.2d 686, 698 (D.C. Cir. 1983)). While the rationale behind the deliberative process privilege encourages candor in deliberative discussions, the requirement that facts must be disclosed is intended to enhance the integrity of agency deliberations. *See Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (noting that "the prospect of disclosure is less likely to make an advisor omit or fudge raw facts").

Here, in withholding over 50 pages of records, ICE undoubtedly has withheld purely factual material. For example, ICE has withheld, almost in its entirety, a set of slides used to

train OPLA field office attorneys, who in turn provide guidance to HSI agents. *See* ICE *Vaughn*

Index at 7. Only the title page and page numbers are unredacted, even though the redactions very

likely include case summaries, legal definitions, and explanations on the court's reasoning,

which all constitute factual material, and thus may not be withheld under the deliberative process

privilege.

The purposes underlying the deliberative process privilege are not served by permitting

Defendant to shield factual information from disclosure to the public. *See Quarles*, 893 F.2d at

392.

### B. ICE Has Improperly Withheld Records Under the Attorney Work Product Privilege.

ICE has improperly withheld 8 records comprising nearly 200 pages pursuant to the

attorney work product privilege. *See* ICE *Vaughn* Index at 17, 18, 22, 23, 35, 37, 40, & 41. The

work product privilege protects "mental impressions, conclusions, opinions, or legal theories of a

party's attorney" that were "prepared in anticipation of litigation or for trial." Fed. R. Civ. P.

26(b)(3). Courts have construed this privilege narrowly, cautioning that a broad reading of the

privilege for agencies with a law enforcement function "could preclude almost all disclosure"

because "the prospect of future litigation touches virtually any object of a prosecutor's

attention." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1203 (D.C. Cir. 1991) (internal

quotations and citation omitted); *see also Coastal States*, 617 F.2d at 865 ("[I]f an agency were

entitled to withhold any document prepared by any person in the Government with a law degree

simply because litigation might someday occur, the policies of the FOIA would be largely

defeated"). To that end, the work product privilege only applies to documents "prepared with a

specific claim supported by concrete facts which would lead to litigation in mind." *Coastal

States*, 617 F.2d at 865. Documents that are "prepared in the agency's ordinary course of

business" and "not sufficiently related to litigation may not be accorded protection." *Public Citizen, Inc. v. Dep't of State*, 100 F. Supp. 2d 10, 30 (D.D.C. 2000) (internal citation omitted).

Here, ICE has failed to meet these requirements because it cannot identify "a specific claim supported by concrete facts" for which these documents were prepared, as opposed to preparation merely "in the agency's ordinary course of business." For example, ICE has identified two sets of slides used to train OPLA attorneys and agency personnel on various areas of law ranging from new Supreme Court opinions to the use of surveillance technologies to the use of warrants and their exceptions. *See* ICE *Vaughn* Index at 17 & 23. These training materials contain no indication they were created "in anticipation of litigation," but rather are part of the agency's "ordinary course of business" to help agency personnel understand the agency's policies and the associated case law. Similarly, two case summaries that ICE withheld explicitly state that agency personnel "should conform to the guidance below," indicating that the documents were prepared to provide guidance rather than in anticipation of any litigation. *See* ICE *Vaughn* Index at 18 & 22; Bates pages 2019-ICLI-00060 578–79, 603–04.

Moreover, even if the withheld records would otherwise enjoy work product protection, ICE has waived the privilege because it has revealed its legal positions and arguments in court filings. "[M]aterials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999)).

Here, ICE has waived the privilege as a result of its litigation positions in cases involving border agents' use of GPS tracking devices on vehicles at the border, such as *Ignjatov* and *Senese*. In these cases, ICE already has revealed detailed information about its policies in court filings, such as HSI's policy that permits border agents to install a GPS tracking device to a

vehicle at the border without a warrant, and monitor non-commercial vehicles for up to 48 hours. *See* Pl. Statement of Facts at ¶¶ 10–14; Hussain Decl., Exhibit 1, at ¶¶ 3–5. And ICE has admitted that its policies were developed in response to *Jones*. Hussain Decl., Exhibit 1, at ¶ 5. The government's position in *Senese* demonstrates that such policies apply to vehicles in the maritime context as well. *See* Pl. Statement of Facts at ¶¶ 15–18. ICE cannot shield documents that address precisely these issues, including a memo discussing use of GPS trackers in the maritime context, *see* ICE *Vaughn* Index at 35, and memos addressing the application of *Jones* to HSI investigations involving GPS tracking devices, *see* ICE *Vaughn* Index at 40 & 41.

Finally, to the extent that only portions of the withheld records are covered by work product privilege, the non-exempt portions must be segregated and disclosed. *See Nat'l Assoc. of Criminal Def. Lawyers v. DOJ Exec. Office for U.S. Attorneys*, 844 F.3d 246, 257 (D.C. Cir. 2016) ("[T]here may . . . be cases in which a record containing some amount of work product also contains . . . segregable, non-exempt material subject to disclosure"); *accord ACLU v. DOJ*, 880 F.3d 473, 488 (9th Cir. 2018) (holding that agency communications "concerning new legal developments" or "[m]aterial that simply lists relevant case law and recites case holdings" are not entitled to work product privilege).

Because ICE has failed to show the withheld records are entitled to work product protection, they must be released.

## C.      Defendant Has Improperly Withheld Records Under the Attorney-Client Privilege.

Of the records at issue, ICE has improperly withheld nearly all records at issue and CBP has withheld one record comprising 3 pages pursuant to attorney-client privilege. *See* ICE *Vaughn* Index at 5, 7, 8, 9, 10, 17, 18, 22, 23, 24, 35, 37, 40, & 41; Howard Decl. at ¶¶ 31, 35.

The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data*, 566 F.2d at 252. The privilege is "narrowly construed" and "'protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.'" *Coastal States*, 617 F.2d at 862 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). The communication may not be circulated beyond those "who are authorized to speak or act for the organization in relation to the subject matter of the communication." *Mead Data*, 566 F.2d at 253 n.24.

Here, ICE fails to provide specific information about its claims of attorney-client privilege. Eight of the records comprising over 300 pages consist of training materials, including slides, training keys, and training test responses, which were created to train OPLA field office attorneys to in turn provide guidance to other agency employees including Task Force Officers and HSI Special Agents. *See* ICE *Vaughn* Index at 5, 7, 8, 9, 10, 17, 23, & 24. Many of the redacted slides include information on recent Supreme Court cases and explanations of key concepts under the Fourth Amendment. The remaining 6 records comprising 44 pages provide guidance to agency personnel on agency policy, often in response to courts' rulings on cases, such as *Jones* and *Ignjatov*. *See* ICE *Vaughn* Index at 18, 22, 35, 37, 40, & 41. Similarly, CBP asserts very little beyond that the withheld document "consists of legal advice" and "descriptions of communications . . . made in the course of obtaining legal advice." Howard Decl. at ¶ 35.

### 1.   *Defendant Has Withheld Records that Constitute Agency Policy.*

Several of ICE's guidance documents were not created in response to "particular legal questions raised by agency employees" as Defendant asserts, Def. Mot at 8–9, but rather reflect general policies and training intended to set uniform conduct and expectations among agency personnel. This Circuit's reasoning in *Tax Analysts v. IRS* is instructive. 117 F.3d 607 (D.C. Cir.

1997). That case concerned Field Service Advice Memoranda ("FSAs"), documents prepared by the IRS's Office of Chief Counsel ("OCC") in response to requests from field personnel for legal guidance referencing the situation of a specific taxpayer. *Id.* at 609. The IRS withheld FSAs pursuant to Exemption 5's attorney-client privilege, claiming they were confidential communications between OCC attorneys and the field personnel. *Id.* at 618. The court rejected the government's claim, holding that the OCC was not merely providing advice to field personnel through issuance of FSAs, but also creating a "body of private law" that functioned as the government's legal position against taxpayers; as a result, the IRS could not invoke attorney-client privilege "to protect this growing body of agency law from disclosure to the public." *Id.* at 619. *Accord Nat'l Council of La Raza v. DOJ*, 411 F.3d 350, 360 (2d Cir. 2005) ("[T]he attorney-client privilege may not be invoked to protect a document adopted as, or incorporated by reference into, an agency's policy").

The same analysis and result applies here. The documents ICE has withheld are created by the national OPLA office and used to train OPLA field office attorneys on ICE's legal positions, and are intended to promote uniformity in the advice that OPLA attorneys give other agency personnel. Similarly, ICE's memoranda sent directly to agency personnel are intended to foster a consistent application of ICE's policies. ICE may not use the attorney-client privilege as a shield to avoid disclosing training and guidance documents on the use of GPS tracking devices on vehicles at the border.

### 2. *Defendant Has Waived Attorney-Client Privilege in Portions of the Withheld Records.*

Even if the withheld documents would otherwise be protected under attorney-client privilege, Defendant has waived the privilege as a result of its positions in prior litigation. "If the government has officially acknowledged information, a FOIA plaintiff may compel disclosure of

that information even over an agency's otherwise valid exemption." *ACLU v. Dep't of Defense*, 628 F.3d 612, 620 (D.C. Cir. 2011) (internal citations omitted).

In *Ignjatov*, the government revealed in court, through statements and accompanying declarations from both ICE and CBP personnel, that: (1) HSI has a policy that permits border agents to install GPS tracking devices on vehicles crossing the border without a warrant; (2) the policy allows agents to monitor the devices for up to 48 hours;[4] and (3) the 48-hour rule does not apply to airplanes, commercial vehicles, and tractor-trailer trucks. *See* Pl. Statement of Facts at ¶¶ 10–14; Hussain Decl., Exhibit 1, at ¶¶ 3–5. Defendant clearly has waived attorney-client privilege on any agency documents that discuss this policy, and must now disclose those records.

## IV.    Defendant Has Improperly Withheld Records Under Exemption 7(E).

Defendant has improperly withheld nearly all of the records at issue, either in full or in part, pursuant to Exemption 7(E). *See* ICE Vaughn Index at 5, 7, 8, 9, 10, 17, 23, 24, 35, 40, 41, 42, 43, & 44; Howard Decl. at ¶ 31.

FOIA exempts law enforcement records[5] if release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). However, the exemption is inapplicable to law enforcement techniques that are publicly known and not "exceptional or

---

[4] The government's position in *Senese* further revealed that the 48-hour limit on monitoring does not run continuously (i.e., up to 48 hours after the vehicle leaves the border), but rather that *active* monitoring may not exceed 48 cumulative hours. Pl. Statement of Facts at ¶ 16. Apparently, agents are authorized to monitor a vehicle for weeks or even months after it crosses the border, so long as episodes of active monitoring are brief and intermittent. *See id.* at ¶ 17.

[5] Plaintiff does not challenge that the records withheld under Exemption 7(E) meet the Exemption 7 threshold of having been "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7); Def. Mot. at 13–14.

secret." *Albuquerque Pub. Co. v. DOJ*, 726 F. Supp. 851 (D.D.C. 1989); *see also Jaffe v. CIA*, 573 F. Supp. 377, 387 (D.D.C. 1983) (Exemption 7(E) permits "the withholding of material which describes *secret* investigative techniques and procedures") (emphasis added).

Contrary to Defendant's claims that the law enforcement techniques used here are little known, there is nothing "exceptional or secret" about law enforcement's use of GPS tracking devices. Even prior to the Supreme Court's seminal decision in *Jones*, law enforcement's warrantless and often suspicionless use of GPS tracking devices was the subject of much public debate.[6] One instance that made national headlines involved an Arab American college student who found a GPS tracking device on his vehicle, had a friend post photos of the device to an online forum, and discovered it was the FBI that placed the device on his car when several FBI agents came to his home to demand the device's return.[7]

In 2012, the Supreme Court took up the constitutionality of warrantless use of GPS tracking devices in *Jones*, which involved narcotics task force officers who suspected the defendant of drug trafficking and placed a GPS tracking device to the undercarriage of his car while it was parked in a public parking lot. 565 U.S. at 403. The officers used the device to track the vehicle's movement for the next 28 days. *Id.* The Court held that the installation of the GPS device was a search that must be justified under the Fourth Amendment. *Id.* at 413.

Post-*Jones*, as this case demonstrates, law enforcement use of GPS tracking devices is neither secretive nor exceptional. As detailed above, the facts of *Ignjatov* were widely reported,

---

[6] Kim Zetter, *Busted! Two New Fed GPS Trackers Found on SUV*, Wired (Nov. 8, 2011), https://www.wired.com/2011/11/gps-tracker-times-two/.

[7] Kim Zetter, *Caught Spying on Student, FBI Demands GPS Tracker Back*, Wired (Oct. 7, 2010), https://www.wired.com/2010/10/fbi-tracking-device/; *see also* Reddit, "Does this mean the FBI is after us?" (Oct. 3, 2010) (online thread with photos of GPS tracking device containing over 3,400 user comments).

including border agent's placement of two GPS tracking devices on defendants' truck at the port

of entry at the U.S.-Canada border. *See supra* n.2; Pl. Statement of Facts at ¶ 4. Moreover, the

government submitted a declaration by an ICE official who admitted that it was HSI's policy to

use GPS devices on vehicles crossing the border without a warrant for up to 48 hours, except for

commercial vehicles. Hussain Decl., Exhibit 1, at ¶ 4.  Likewise, in *Senese*, when considering

defendant's motion to suppress, the court thoroughly discussed a CBP agent's installation of a

GPS tracking device to defendant's vessel, and subsequent monitoring of the device 21 times

over 18 days. *See* Pl. Statement of Facts at ¶¶ 15–18.

As this Court has held, the government may not invoke Exemption 7(E) to protect

"techniques that are commonly described or depicted in movies, popular novels, stories or

magazines, or on television," *Albuquerque Pub. Co.*, 726 F. Supp. at 858. Thus, Defendant

should not be permitted to conceal information about its use of GPS tracking devices on vehicles

crossing the border, given the focus on this issue in numerous court cases that have garnered

widespread public attention. Disclosing this information will not create a circumvention risk, and

so it must be released.

## V.  **Defendant Has Failed to Segregate and Release Non-Exempt Material.**

Defendant's refusal to disclose *any* records that substantively describe ICE and CBP's

policies, procedures, training manuals, or training materials regarding the agencies' use of GPS

tracking devices at the border demonstrates its failure to comply with FOIA's segregability

requirement. Because FOIA is concerned with "information, not documents," an agency "cannot

justify withholding an entire document simply by showing that it contains some exempt

material." *Mead Data*, 566 F.2d at 260. Rather, "[a]ny reasonably segregable portion of a record

shall be provided to any person requesting such record after deletion of the portions which are

exempt." 5 U.S.C. § 552(b).

The government bears the burden of demonstrating that no segregable information exists and "must provide a 'detailed justification' for its non-segregability." *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead Data*, 566 F.2d at 261). The agency must "describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Mead Data*, 566 F.2d at 261.

Here, Defendant claims it has "disclosed the non-exempt information from records where feasible," and points to the supplemental release from September 30, 2020 of ICE's segregability review. Def. Mot. at 19. However, Defendant has withheld over 350 pages of records at issue; most of these pages have been withheld in their entirety or have large blocks of redactions that conceal entire paragraphs and pages from public disclosure. For example, in a 54-page set of training slides, ICE almost entirely redacted 51 slides; the only unredacted text on those pages is the slide title. *See* ICE *Vaughn* Index at 24. It is near certain that Defendant has withheld more information than is otherwise justifiable. Thus, despite Defendant's claims that it has complied with FOIA's segregability requirement, Defendant has not satisfied its burden and is not entitled to summary judgment.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its cross-motion for summary judgment and deny Defendant's motion for summary judgment.

Dated: February 5, 2021                     Respectfully Submitted,


_____*/s/ David L. Sobel*_____
DAVID L. SOBEL
D.C. Bar No. 360418
Electronic Frontier Foundation
5335 Wisconsin Avenue, N.W.
Suite 640
Washington, DC  20015
(202) 246-6180

SAIRA HUSSAIN (admitted in CA)
JENNIFER LYNCH (admitted in CA)
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333

*Counsel for Plaintiff*