IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendant. | Civil Case No. 19-02578-TFH |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE AND PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Local Civil Rule 7(h) of the Rules of this Court, Plaintiff Electronic Frontier Foundation ("EFF") hereby submits its statement of material facts as to which EFF contends there is no genuine issue in connection with its cross-motion for summary judgment. This statement also constitutes EFF's response to Defendant U.S. Department of Homeland Security's ("DHS") statement of material facts filed in conjunction with Defendant's motion for summary judgment.

**I.   Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute**

1. EFF adopts the facts set forth in the following paragraphs of Defendant's statement and does not disagree with any of the matters set forth therein: 1, 2, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, and 18.

2. EFF submits that the facts set forth in paragraphs 3, 4, and 10 regarding U.S. Immigration and Customs Enforcement's ("ICE") search for responsive records are not material (nor in dispute) because EFF is not challenging the adequacy of ICE's search for records.

1

3. EFF adopts the statement in paragraph 17 regarding U.S. Customs and Border Protection's ("CBP") search for responsive records that "[t]he Office of Field Operations located 49 records that were potentially responsive to Plaintiff's FOIA request." To the extent the rest of the paragraph goes to the adequacy of CBP's search, it constitutes a legal conclusion that EFF disputes.

II.   **Plaintiff's Statement of Material Facts Not in Dispute**

4. In *United States v. Ignjatov*, No. 5:17-cr-00222-JGB (C.D. Cal.), during the course of an FBI and Los Angeles Police Department ("LAPD") narcotics investigation into defendants Slavco Ignjatov and Valentino Hristovski, border agents attached two Global Positioning System ("GPS") tracking devices to defendants' semi-truck and trailer at the port of entry in Port Huron, Michigan. ECF No. 121, at 1–2.

5. Investigators tracked defendants' vehicle over the course of two days as the truck traveled from Port Huron, Michigan to San Bernardino, California. *Id.* at 2–3.

6. The defendants moved to suppress the evidence, arguing in part that the installation of the GPS tracking devices on their vehicle without a warrant violated their Fourth Amendment rights. *Ignjatov,* ECF No. 86, No. 5:17-cr-00222-JGB, at 6–13.

7. Relying on the Supreme Court's precedent in *United States v. Jones*, 565 U.S. 400 (2012), the *Ignjatov* court rejected the government's assertion that the installation of the GPS devices was permissible under the border search exception to the Fourth Amendment, and suppressed the evidence. ECF No. 121, No. 5:17-cr-00222-JGB.

8. In doing so, the court referred to the government's actions as "official misconduct" and stated that the investigators' "decision not to seek legal guidance or obtain a warrant, coupled with the almost two-day long use of the GPS devices . . . creates a scenario of significant government misconduct." *Id.* at 12.

9. The government filed a motion to amend the court's order to remove reference to "significant government misconduct," in which the government identified conversations between FBI Special Agent Hannah Monroe, LAPD Officer Asatur Mkrtchyan, and two DHS agents regarding the use of GPS tracking devices on vehicles at the border. *Ignjatov*, ECF No. 125, No. 5:17-cr-00222-JGB.

10. Special Agent Monroe and Officer Mkrtchyan testified that in a conference call with a CBP agent, the CBP agent informed the investigators that "border agents were authorized to install GPS trackers on any vehicle at the border without a warrant so long as the GPS monitoring did not exceed 48 hours, and that the 48-hour rule did not apply to commercial vehicles, such as semi-trucks, which are subject to increased government regulation.'" *Id.* at *5–*6 (internal quotations and citations omitted).

11. Special Agent Monroe also testified that she spoke with an agent with ICE's Homeland Security Investigations ("HSI"), who "confirmed that the CBP officer's guidance was correct." *Id.* at *6 (internal citation omitted).

12. The government also submitted a declaration from HSI Assistant Director Matthew C. Allen to "describe HSI's longstanding practices and procedures on the use of GPS tracking devices in HSI investigations." Declaration of Saira A. Hussain ("Hussain Decl."), Exhibit 1, at ¶ 3.

13. In his declaration, Assistant Director Allen stated that "it is HSI's policy that a customs officer may install a GPS tracking device on a vehicle at the United States border without a warrant or individualized suspicion." *Id.* at ¶ 4. Assistant Director Allen continued: "HSI limits warrantless GPS monitoring to 48 hours, with the exception of airplanes, commercial vehicles, and semi-tractor trailers, which have a significantly reduced expectation of privacy in the location of their vehicles." *Id.*

14. Assistant Director Allen further stated that "[i]t is HSI's position that such policy is consistent with the U.S. Supreme Court's decisions in *United States v. Jones*, 565 U.S. 400 (2012), and *United States v. Flores-Montano*, 541 U.S. 149 (2004))." *Id.* He

also stated that "HSI's position on the use of GPS tracking devices was developed . . . in response to the 2012 *Jones* decision" and that this position could be "found in HSI policies and procedures, as well as trainings regularly provided to HSI personnel, all of which were in place throughout the pendency of this case and the underlying investigation." *Id.* at ¶ 5.

15. In *United States v. Senese*, No. 18-cr-60076-BB (S.D. Fla.), CBP agents boarded defendant's vessel at Rivera Beach Marina in Florida and, suspecting that the defendant was involved in drug trafficking, agents, without a warrant, placed a GPS tracking device on the vessel. ECF No. 37, at *2–*3.

16. The GPS tracking device allowed for monitoring for up to 48 hours, which meant that "if it took a technician two minutes, for instance to log in . . . and check the position of the tracker, then that would constitute two minutes out of the 48 hours of monitoring time available on the GPS tracker." *Id.* at *4.

17. According to logs submitted to the court, the government "checked the tracker 21 times on approximately 18 different days." *Id.*

18. The GPS tracker data revealed that the defendant's location was monitored both within and outside of the United States. *Id.* at *4–*5.

Dated: February 5, 2021                              Respectfully Submitted,

                                                                         */s/ David L. Sobel*
DAVID L. SOBEL
D.C. Bar No. 360418
Electronic Frontier Foundation
5335 Wisconsin Avenue, N.W.
Suite 640
Washington, DC  20015
(202) 246-6180

SAIRA HUSSAIN (admitted in CA)
JENNIFER LYNCH (admitted in CA)
Electronic Frontier Foundation

815 Eddy Street
San Francisco, CA 94109
(415) 436-9333

*Counsel for Plaintiff*