**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ELECTRONIC FRONTIER FOUNDATION,

       Plaintiff,

  v.

DEPARTMENT OF HOMELAND SECURITY,

       Defendant.

Civil Case No. 19-02578-TFH

**<u>REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................1

ARGUMENT ................................................................................................................1

I.   CBP Has Failed to Conduct an Adequate Search. ..............................................1

II.  Defendant Has Improperly Withheld Records Under Exemption 5. ...................4

    A.   Defendant Has Failed to Prove the Applicability of the Deliberative
    Process Privilege.....................................................................................5

    B.   ICE Has Failed to Prove the Applicability of the Attorney Work Product
    Privilege. ................................................................................................7

    C.   Defendant Has Failed to Prove the Applicability of the Attorney-Client
    Privilege. ................................................................................................8

III. Defendant Has Failed to Show How Disclosure of the Withheld Records
Risks Circumvention of the Law, as Required Under Exemption 7(E)............................10

IV.  ICE Has Failed to Release Reasonably Segregable Materials...........................13

V.   If the Court Has Any Doubts About Granting Plaintiff's Motion for Summary
Judgment, the Court Should Review the Withheld Records *In Camera*. .........................14

CONCLUSION.............................................................................................................15

# TABLE OF AUTHORITIES

**Pages**

## <u>CASES</u>

*Aguiar v. DEA*,
   865 F.3d 730 (D.C. Cir. 2017) ........................................................................... 2, 4

*Allen v. CIA*,
   636 F.2d 1287 (D.C. Cir. 1980) ...................................................................... 14, 15

*Banks v. Dep't of Justice*,
   813 F. Supp. 2d 132 (D.D.C. 2011) ....................................................................... 11

*Barnard v. Dep't of Homeland Sec.*,
   598 F. Supp. 2d 1 (D.D.C. 2009) ........................................................................... 12

*Blackwell v. FBI*,
   646 F.3d 37 (D.C. Cir. 2011) ................................................................................ 10

*Clemente v. FBI*,
   741 F. Supp. 2d 64 (D.D.C. 2010) ......................................................................... 11

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ............................................................................ 5, 7

*Ctr. for Auto Safety v. EPA*,
   731 F.2d 16 (D.C. Cir. 1984) ................................................................................ 15

*EFF v. Dep't of Justice*,
   826 F. Supp. 2d 157 (D.D.C. 2011) ......................................................................... 5

*Ellis v. Dep't of Justice*,
   110 F. Supp. 3d 99 (D.D.C. 2015) ........................................................................... 7

*In re Sealed Case*,
   146 F.3d 881 (D.C. Cir. 1998) ............................................................................ 7, 8

*Iturralde v. Comptroller of the Currency*,
   315 F.3d 311 (D.C. Cir. 2003) ................................................................................. 2

*Johnson v. DOJ Exec. Off. for U.S. Att'ys*,
   310 F.3d 771 (D.C. Cir. 2002) ............................................................................... 13

*Judicial Watch v. Dep't of Homeland Sec.*,
   857 F. Supp. 2d 129 (D.D.C. 2012) .......................................................................... 4

*Mead Data Ctr., Inc. v. Dep't of Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) ............................................................................... 13

*Morley v. CIA*,
   508 F.3d 1108 (D.C. Cir. 2007) ............................................................... 2, 3

*Nat'l Assoc. of Criminal Def. Lawyers v. DOJ Exec. Office for U.S. Att'ys*,
   844 F.3d 246 (D.C. Cir. 2017) ................................................................... 13

*\*Oglesby v. Dep't of Army*,
   920 F.2d 578 (D.C. Cir. 1990) .................................................................. 3, 4

*Public Citizen, Inc. v. Dep't of State*,
   100 F. Supp. 2d 10 (D.D.C. 2000) ............................................................. 7, 8

*\*Reporters Comm. for Freedom of the Press v. FBI*,
   877 F.3d 399 (D.C. Cir. 2017) ............................................................. 1, 2, 3

*Sack v. Dep't. of Defense*,
   823 F.3d 687 (D.C. Cir. 2016) ................................................................... 12

*Safety Research & Strategies, Inc. v. Dep't of Transp.*,
   903 F. Supp. 2d 16 (D.D.C. 2012) ............................................................... 4

*Spirko v. U.S. Postal Serv.*,
   147 F.3d 992 (D.C. Cir. 1998) ................................................................... 14

*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) ................................................................. 13

*Thompson v. Dep't of Justice*,
   146 F. Supp. 3d 72 (D.D.C. 2015) ............................................................... 7

*\*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
   141 S. Ct. 777 (2021) ............................................................................. 6, 7

*\*United States v. Ignjatov*,
   No. 5:17-cr-00222-JGB (C.D. Cal.) ................................................. *passim*

*\*United States v. Jones*,
   565 U.S. 400 (2012) ................................................................................... 1

*\*United States v. Senese*,
   No. 18-cr-60076-BB (S.D. Fla.) ......................................................... 1, 8, 10

*Valencia-Lucena v. U.S. Coast Guard*,
   180 F.3d 321 (D.C. Cir. 1999) ..................................................................... 2

*\*Vaughn v. Rosen*,
   484 F.2d 820 (D.C. Cir. 1973) ................................................................... 14

*Weisberg v. Dep't of Justice*,
   627 F.2d 365 (D.C. Cir. 1980) ..................................................................... 4

**<u>STATUTES</u>**

5 U.S.C. § 522(a)(4)(B) ............................................................................................................ 14

## INTRODUCTION

In its opening brief, Plaintiff EFF identified significant deficiencies in CBP's search, Defendant DHS's withholdings under Exemptions 5 and 7(E), and ICE's segregability review. Dkt. 21 & 22 ("Pl. Mot."). Defendant, in its opposition and reply brief, has failed to adequately address these shortcomings. Dkt. 25 & 26 ("Def. Reply"). The fact remains that Defendant refuses to provide any substantive information to the public about CBP and ICE's policies, procedures, and trainings concerning the use of GPS tracking devices at the border. Defendant has withheld these records despite its litigation positions in at least two recent and well-publicized criminal cases involving the agencies' warrantless use of GPS tracking devices, *see United States v. Ignjatov*, No. 5:17-cr-00222-JGB (C.D. Cal.) and *United States v. Senese*, No. 18-cr-60076-BB (S.D. Fla.); the Supreme Court's decision in *United States v. Jones*, 565 U.S. 400 (2012); and significant public understanding of the use of the technology. Further, Defendant's refusal to comply with FOIA leaves unanswered questions about the government's compliance with the Fourth Amendment. Defendant has failed to meet its burden of proof for withholding over 350 pages of records; accordingly, Plaintiff respectfully asks the Court to deny Defendant's motion for summary judgment, grant Plaintiff's cross-motion, and order the agencies to immediately produce the improperly withheld records.

## ARGUMENT

### I.    CBP Has Failed to Conduct an Adequate Search.

CBP has failed to carry its burden of showing it conducted an adequate search for responsive records. CBP cannot meet its burden because "'a review of the record raises substantial doubt' as to the search's adequacy, 'particularly in view of well defined requests and positive indications of overlooked materials.'" *See Reporters Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180

F.3d 321, 326 (D.C. Cir. 1999)). Although "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search," *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003), there are cases, such as this one, where a "failure to find a record that once existed, coupled with a conclusory affidavit about the methodology of the search, can weaken the agency's claim for summary judgment." *Aguiar v. DEA*, 865 F.3d 730, 739 (D.C. Cir. 2017).

Defendant's submission of a supplemental declaration from Patrick A. Howard, a Branch Chief in the FOIA Division at CBP, adds little to support the agency's claim that its search was adequate. *See* Dkt. 25-2 & 26-2. In its discussion of the Office of Field Operations ("OFO") Field Offices' supplemental search for records, CBP explains the parameters of the search:

> The precise search conducted by the individual Field Offices varied by location, but all eighteen offices searched locations used by field personnel to store electronic files, including either the local shared drive(s) or Sharepoint site(s) used by the office to store policy and training records . . . All Field Offices used at a minimum the keyword search terms "GPS" and "tracker" in conducting their electronic searches.

Def. Reply at 3; Howard Supp. Decl. at ¶ 3. CBP further explains that 16 of 18 OFO Field Offices "conducted keyword searches of electronic files using, at a minimum, the terms 'GPS' and 'tracker.'" Howard Supp. Decl. at ¶ 3. Two Field Offices could not confirm that all of their searches contained the search terms "GPS" and "tracker," and conducted an additional search with these two search terms during summary judgment briefing in this case. *Id.*

This Circuit previously has found similar levels of detail insufficient to grant summary judgment to a defendant in a FOIA case. *See, e.g.*, *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (government not entitled to summary judgment where declaration contained "no information about the search strategies" nor provided "any indication of what each directorate's search specifically yielded"); *see also* Pl. Mot. at 10–11. *Reporters Committee for Freedom of*

*the Press v. FBI* is particularly instructive. In that case, a FOIA plaintiff challenged the adequacy of an FBI search for records where the FBI submitted declarations explaining that its Records Section forwarded the text of the FOIA request to each targeted office and requested they "conduct a search of database systems, as well as paper and manual files" and "recommended that each office email its employees asking them to search for all relevant records." 877 F.3d at 403. The court of appeals held that the FBI's search was inadequate because the declarations were "utterly silent as to which files or record systems were examined in connection with the targeted searches and how any such searches were conducted." *Id.* at 404.

Here, CBP's details regarding its search are similarly lacking. The agency can only state that its 18 OFO Field Offices "conducted keyword searches of electronic files" that included "either local shared drive(s) or SharePoint site(s) used by the office to store policy and training records." Howard Supp. Decl. at ¶ 3. However, it cannot state with specificity where each Field Office searched for records, since the "precise search . . . varied by location." *Id.* CBP also does not speak to the search terms the 18 OFO Field Offices used in their searches, only that "at a minimum" all of the Field Offices used the search terms "GPS" and "tracker." *Id.* Thus, CBP cannot attest to the "search strategies of the components charged with responding to FOIA requests," and does not provide "any indication of what each directorate's search specifically yielded." *See Morley*, 508 F.3d at 1122. To the extent that some Field Offices only used the search terms "GPS" and "tracker," these search terms alone do not constitute "methods which can be reasonably expected to produce the information requested." *See Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). This is especially true given the ample information Plaintiff provided in its FOIA request about the *Ignjatov* case and representations made in that case by a CPB officer confirming the existence of a policy governing border officers' use of GPS

tracking devices. *See* Pl. Statement of Facts at ¶ 10 (Dkt. 21-1 & 22-1); *see also* Pl. Complaint (Dkt. 1).

Moreover, Defendant's reply brief fails to provide any additional information about which CBP personnel were tasked with conducting the search, as this Circuit has required in its precedent. *See, e.g.*, *Weisberg v. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980) (finding insufficient an affidavit that failed to "denote which files were searched *or by whom*") (emphasis added); s*ee also Judicial Watch v. Dep't of Homeland Sec.*, 857 F. Supp. 2d 129, 140 (D.D.C. 2012) (identifying "who conducted the search" as a "necessary detail[]" for an adequate search); *Safety Research & Strategies, Inc. v. Dep't of Transp.*, 903 F. Supp. 2d 1, 6 (D.D.C. 2012) (same).

Finally, although the supplemental Howard declaration sets forth the conclusory assertion that CBP "searched all locations likely to contain records responsive to Plaintiff's FOIA request," Howard Supp. Decl. at ¶ 4, this Circuit previously has found declarations to be inadequate when they do not explain *why* that is the case. *See, e.g.*, *Aguiar*, 865 F.3d at 739 (finding inadequate a declaration stating that "no other record systems are reasonably likely to contain" the requested information because an agency must show that its approach "'was reasonably calculated to uncover all relevant documents'") (quoting *Oglesby*, 920 F.2d at 68).

Because CBP has failed to provide the requisite level of specificity in its declarations to demonstrate that its search was adequate, the Court should deny Defendant's motion for summary judgment.

## II. Defendant Has Improperly Withheld Records Under Exemption 5.

Defendant has failed to meet its burden of proving that Exemption 5 justifies ICE's withholding of 14 records, totaling more than 350 pages, and CBP's withholding of one record, totaling 3 pages. *See* Pl. Mot. at 11–12.

A.      **Defendant Has Failed to Prove the Applicability of the Deliberative Process Privilege.**

Defendant's boilerplate statements that the deliberative process privilege applies to one record from CBP and three records[1] from ICE are insufficient. Although Defendant recognizes that it must identify "what deliberative process is involved, and the role played by the documents in issue in the course of that process," it utterly fails to meet this standard. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980).

In CBP's case, the agency submitted a supplemental declaration that recites a legal conclusion that some portion of the withheld records consist of "pre-decisional advice and recommendations to agency decision makers." Def. Reply at 5. The additional information that CBP provides about the agency decision concerning GPS tracking devices on vehicles crossing the border in a specific Field Office's area of responsibility ("AOR"), Howard Supp. Decl. at ¶ 7, is still insufficient for two reasons. First, CBP fails to provide adequate information about the senders and recipients of the emails, broadly categorizing some senders and recipients as "law enforcement personnel" without further explanation and failing to even identify the sender and recipient of the last email in the chain. Def. Reply at 4. Second, and relatedly, the agency fails to explain the role of all of the various individuals in the email thread regarding the deliberative process. This Court has ruled such deficiencies inadequate in other cases. *See, e.g.*, *EFF v. Dep't of Justice*, 826 F. Supp. 2d 157, 168 (D.D.C. 2011) (because the "deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process," the agency must explain each document's "content" and "context," including the "decisionmaking process," the "function and significance of the document[]" in that process, the

---

[1] ICE no longer asserts the deliberative process privilege for entry 37. Def. Reply at 6 n.4. Thus, the three remaining records at issue are entries 7, 40, and 41. *See* ICE *Vaughn* Index (Dkt. 18-8).

"nature of the decisionmaking authority" of the document's author, and the "positions in the chain of command" of the document's recipients).

In ICE's case, Defendant categorizes the three withheld records as "drafts," and thus predecisional. Def. Reply at 6. However, as stated in Plaintiff's opening memorandum, a record's designation as a "draft" does not automatically entitle it to withholding, but rather requires additional specificity that Defendant has failed to provide. Pl. Mot. at 15; *see also U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 788 (2021) ("[D]etermining whether an agency's position is final for purposes of the deliberative process privilege is a functional rather than formal inquiry.").

Defendant several times cites *U.S. Fish & Wildlife Services* for the notion that drafts may properly be withheld under the deliberative process privilege, but the facts of that case are markedly different than the present scenario. There, the Sierra Club, through FOIA requests, sought a draft biological opinion from U.S. Fish and Wildlife Services and National Marine Fisheries Services (together, "Services"), which was created in response to an Environmental Protection Agency ("EPA") proposed rule. *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 784–85. However, the Services never sent the draft biological opinion to the EPA, and instead continued to engage in discussions with the agency, after which point the EPA sent the Services a revised proposed rule and the Services issued a final "no jeopardy" biological opinion. *Id.* at 784. Here, ICE has failed to present a final policy, despite ample evidence that one exists given a Homeland Security Investigations ("HSI") Assistant Director's declaration submitted in *Ignjatov* describing the policy as "longstanding" and "developed . . . in response to the 2012 *Jones* decision"— indicating these "drafts" actually constitute final agency policy. *See* Hussain Decl., Exh. 1, at ¶¶ 3, 5 (Dkt. 21-3 & 22-3); *see also* Pl. Mot. at 14. Moreover, unlike in *U.S. Fish & Wildlife*

*Services*, where the draft biological opinion was prepared by lower-level staff and sent to the agencies' decisionmakers for approval, the *opposite* is true here: the withheld records were drafted by ICE's decisionmakers and were intended to flow to lower-level staff, signaling the end of a decision-making process rather than a true deliberative process. *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 788; Pl. Mot at 14.

Both CBP and ICE have failed to carry their burden of showing that the records at issue have been properly withheld under the deliberative process privilege.

**B.      ICE Has Failed to Prove the Applicability of the Attorney Work Product Privilege.**

ICE has failed to carry its burden that it properly withheld eight records under the work product privilege. *See* ICE *Vaughn* Index at 17, 18, 22, 23, 35, 40, & 41. Defendant has failed to rebut the fact that the withheld records were not created with a "specific claim" in mind, but rather were "prepared in the agency's ordinary course of business." *See Coastal States*, 617 F.2d at 865; *Public Citizen, Inc. v. Dep't of State*, 100 F. Supp. 2d 10, 30 (D.D.C. 2000).

Instead, Defendant claims the test that should apply is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Def. Reply at 8 (citing *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998)). To meet this test, the government generally must provide a description of the contents of the withheld document, including the document's author and the circumstances surrounding its creation—and provide some indication of the type of litigation for which the document's use as at least foreseeable. *Ellis v. Dep't of Justice*, 110 F. Supp. 3d 99, 108 (D.D.C. 2015). Defendant has not done so. In the cases Defendant cites as establishing this test, there was significant evidence of anticipated litigation. *See Thompson v. Dep't of Justice*, 146 F. Supp. 3d 72, 85 (D.D.C. 2015) (DOJ memos, email messages, requests

7

for permission, and other records pertaining to an active criminal prosecution); *In re Sealed Case*, 146 F.3d at 886 (legal advice to a political fund after the Federal Election Commission announced it was "investigating cases" and the fund was publicly accused of wrongdoing). Conversely, here, Defendant puts little forward beyond conclusory statements that the records "contemplate future litigation" and "were prepared in part because of the prospect of litigation." *See* Def. Reply at 8. Far more evidence points to these records as having been created "in the agency's ordinary course of business," to brief Office of the Principal Legal Advisor ("OPLA") field attorneys and agency personnel on the agency's policies and associated case law. *See Public Citizen*, 100 F. Supp. 2d at 30; Pl. Mot. at 17.

Moreover, Defendant has failed to rebut that ICE has waived the privilege by revealing detailed information about the government's use of GPS tracking devices at the border in specific criminal cases, such as *Ignjatov* and *Senese*. *See* Pl. Mot. at 17–18.

Finally, Defendant's argument that it is not obligated to segregate factual information in records fully protected by the work product privilege misses the point. *See* Def. Reply at 8–9. Plaintiff's opening memorandum specifically states that when "*portions* of the withheld records are covered" by the privilege, "the *non-exempt portions* must be segregated and disclosed." Pl. Mot. at 18 (emphasis added).

### C.    Defendant Has Failed to Prove the Applicability of the Attorney-Client Privilege.

Defendant has failed to carry its burden that it has properly withheld one CBP record and 14 ICE records pursuant to the attorney-client privilege. *See* Howard Decl. at ¶¶ 31, 35 (Dkt. 18-4); ICE *Vaughn* Index at 5, 7, 8, 9, 10, 17, 18, 22, 23, 24, 35, 37, 40, & 41. To do so, Defendant must provide specific information about the records, including the absence of waiver. Pl. Mot. at 19.

8

In its reply brief, Defendant has provided little additional evidence beyond the conclusory showing in its opening memorandum that the records were properly withheld under the privilege. *See id.* at 19–21.

The additional information Defendant provides in its reply brief misapprehends Plaintiff's position. In one instance, Defendant specifically characterizes a withheld record as ICE "seeking legal advice from the Department of Justice pertaining to a DOJ policy." Def. Reply at 9 (citing ICE *Vaughn* Index at 37). However, this record—an email thread between an Assistant U.S. Attorney, OPLA attorneys, and clients—contains a summary of an email that a DOJ Criminal Chief sent to all Assistant U.S. Attorneys stating that they should ensure their policy is "consistently applied and communicated to all agents," but redacts the restatement of the policy. *See* ICE *Vaughn* Index at 37; Bates 2019-ICLI-00060 893–94. As stated in Plaintiff's opening brief, EFF seeks only the restatement of the policy within this record, not communications that contain discussion and thoughts regarding the policy. Pl. Mot. at 6 n.3. This information is not protected by the privilege for two reasons: (1) it reflects agency law that is intended to promote uniformity in conduct among agency personnel, *see* Pl. Mot. at 19–20; and (2), insofar as the information has already been revealed as a result of the government's positions in prior litigation such as *Ignjatov*, the privilege has been waived, *see* Pl. Mot. at 20–21.

Defendant claims that CBP did not waive the privilege because the information that the agency has withheld pertains to a specific field office. Def. Reply at 5. CBP appears to misunderstand the information that has already been revealed. In *Ignjatov*, a CBP agent told an FBI special agent and a Los Angeles Police Department officer that "border agents were authorized to install GPS trackers on any vehicle at the border without a warrant so long as the GPS monitoring did not exceed 48 hours, and that the 48-hour rule did not apply to commercial

vehicles, such as semi-trucks, which are subject to increased government regulation." Pl.
Statement of Facts at ¶ 10. Nowhere did the CBP officer in *Ignjatov* indicate that this policy was
limited to any particular Field Office's AOR. *Cf.* Def. Reply at 5–6. Moreover, because the first
email in the withheld record is from CBP's Office of Chief Counsel to unidentified CBP law
enforcement personnel, Def. Reply at 4, it is unclear whether the entire email chain discusses the
establishment of a policy for a particular AOR, and if so, whether the guidance draws from
CBP's policy that was disclosed in *Ignjatov* or other litigation. *See supra* Part II.A at 5–6
(identifying deficiencies in CBP's showing pursuant to the deliberative process privilege). This
underscores Defendant's need to segregate and release non-exempt materials. *See infra* Part IV;
Pl. Mot. at 23–24.

 Finally, with regard to ICE, Defendant has failed to rebut that the agency waived the
privilege by revealing detailed information about the government's use of GPS tracking devices
at the border in its litigation positions in criminal cases such as *Ignjatov* and *Senese*. Pl. Mot. at
20–21.

### III. Defendant Has Failed to Show How Disclosure of the Withheld Records Risks Circumvention of the Law, as Required Under Exemption 7(E).

 Defendant cannot withhold 14 ICE records and one CBP record under Exemption 7(E)
because it has failed to show how, given the substantial amount of public knowledge about the
government's use of GPS tracking devices on vehicles (both in the interior and at the border),
disclosure of these records risks circumvention of the law. *See* ICE *Vaughn* Index at 5, 7, 8, 9,
10, 17, 23, 24, 35, 40, 41, 42, 43, & 44; Howard Decl. at ¶ 31.

 To meet the threshold set forth under Exemption 7(E), an agency must "demonstrate
logically how the release of the requested information might create a risk of circumvention of the
law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (internal quotations and citation

omitted). Plaintiff's opening brief established that Defendant's assertions regarding the risk of circumvention of law are insufficient because of the large amount of information already publicly known about law enforcement's use of GPS tracking devices, including at the border. *See* Pl. Mot. at 22–23. When the particular techniques, procedures, and guidelines at issue are well known, this Court's precedent requires specificity beyond "a declaration written in vague terms or in a conclusory manner." *Banks v. Dep't of Justice*, 813 F. Supp. 2d 132, 146 (D.D.C. 2011); *see also Clemente v. FBI*, 741 F. Supp. 2d 64, 88 (D.D.C. 2010) (requiring the agency to "provide evidence from which the Court can deduce something of the nature of the techniques in question" rather than a "vaguely worded categorical description").

Defendant clearly fails to meet this standard. In its reply brief, Defendant repeats assertions from its opening brief that CBP's withholding of "specific details related to the circumstances or the specific operational locations" is appropriate because "such information could undermine CBP's ability to detect illicit activity." Def. Reply at 10; *see also* Dkt. 18-1 ("Def. Mot.") at 17–18. However, Plaintiff has plainly stated—and Defendant has acknowledged—that it does not challenge withholding of specific locations or ports of entry where border agents use GPS tracking devices. Pl. Mot. at 6; Def. Reply at 10 n.5. Moreover, Defendant's categorization of the withheld records as "specific details related to the circumstances" that "could undermine CBP's ability to detect illicit activity" is exactly the type of vague and conclusory language that this Court has previously deemed insufficient. *See, e.g.,* *Banks*, 813 F. Supp. 2d at 146; *Clemente*, 741 F. Supp. 2d at 88. Defendant's description of ICE's withheld records suffers from the same deficiency. *See* Def. Reply at 11–12 (stating that although some of ICE's techniques may be known to the public, "the details of those techniques are not," and disclosure "could reasonably be expected to circumvent the law").

The cases Defendant cites do not support its position, as the government there provided far more detail about the risk of circumvention of law if the withheld records were to be disclosed. For example, in *Sack v. Department of Defense*, the government withheld reports related to polygraph procedures and techniques, as they detailed "the strengths and weaknesses of particularly polygraph programs" that "necessarily would disclose information about the underlying techniques and procedures themselves," thereby creating a risk that people could subvert polygraph examinations. 823 F.3d 687, 694–95 (D.C. Cir. 2016). *See also, e.g.*, *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 22 (D.D.C. 2009) (withholding "CBP examination and inspection procedures, internal reporting requirements and instructions on how to process international travelers" because such information "could be used by potential violators to develop countermeasures to evade detention, inspection and targeting methods.") As illustrated above, here, Defendant has provided far less information about how disclosure of the records risks circumvention of the law.

Defendant identifies a list of "sensitive" law enforcement information unrelated to ICE's use of GPS tracking devices contained within the withheld records, which it claims could risk circumvention of the law. Def. Reply at 11–12. But it is Defendant that identified the records as responsive to Plaintiff's FOIA request. Rather than redacting unresponsive materials and releasing the rest, Defendant instead has failed to disclose a *single* record that sheds substantive light on ICE and CBP's policies, procedures, training manuals, and training materials concerning the use of GPS tracking devices at the border. Defendant's argument only further exemplifies the need for ICE to segregate and release non-exempt material. *See infra* Part IV; Pl. Mot. at 23–24.

**IV.     ICE Has Failed to Release Reasonably Segregable Materials.**

ICE has failed to prove that it adequately segregated exempt from non-exempt material in the withheld records.[2] Under FOIA, an agency "must provide a 'detailed justification' for its non-segregability," *Johnson v. DOJ Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead Data Ctr., Inc. v. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977)). This is even more acute when, as here, an agency has withheld more than 100 pages in full,[3] and has heavily redacted large portions of more than 200 additional pages. *See, e.g.*, *Nat'l Assoc. of Criminal Def. Lawyers v. DOJ Exec. Office for U.S. Att'ys*, 844 F.3d 246, 257 (D.C. Cir. 2017) ("[T]here may . . . be cases in which a record containing some amount" of privileged material may also contain "segregable, non-exempt material subject to disclosure").

In addition, ICE must provide sufficient evidence to allow this Court to "make specific findings of segregability regarding the documents to be withheld." *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). The agency has failed to do so.

The Court should reject Defendant's argument that ICE has met its obligations pursuant to FOIA by submitting a *Vaughn* index and a declaration setting forth boilerplate assertions that the agency reviewed the withheld materials and determined that all non-exempt portions were released. *See* Def. Reply at 12 (stating "all information not exempted from disclosure . . . was correctly segregated and non-exempt portions were released"); Pineiro Decl. at ¶ 57 (Dkt. 18-3) (same); Def. Mot. at 19 (asserting the agencies "disclosed the non-exempt information from the

---

[2] Plaintiff agrees with Defendant that it does not challenge CBP's segregability review. *See* Def. Reply at 12.

[3] Although ICE's *Vaughn* index identifies some withholdings as "partial," several withheld records have no information viewable beyond page numbers or heading numbers. *See* ICE *Vaughn* Index at 5, 7, 8, 9, 10, 42, & 43.

records where feasible"). Such conclusory statements are insufficient for ICE to meet its segregability burden.

**V.     If the Court Has Any Doubts About Granting Plaintiff's Motion for Summary Judgment, the Court Should Review the Withheld Records *In Camera*.**

As set forth above, Defendant has failed to satisfy its burden for summary judgment, and the Court accordingly should grant Plaintiff's cross-motion for summary judgment and order Defendant to immediately produce the improperly withheld records. However, should the Court have any doubts, Plaintiff respectfully requests that the Court conduct an *in camera* review of the disputed records.

Congress intended that a court's *de novo* review under FOIA "be extremely thorough so as to insure that agencies do not impermissibly expand by unreviewed interpretations the particular types of matters Congress has exempted from disclosure." *Allen v. CIA*, 636 F.2d 1287, 1297 (D.C. Cir. 1980) (citation and quotations omitted), *disavowed on other grounds by Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828 (D.C. Cir. 1983). As this Circuit has recognized, the information asymmetry in FOIA cases makes it so that "the party seeking disclosure cannot know the precise contents of the documents sought . . . . In a very real sense, only one side to the controversy (the side opposing disclosure) is in a position confidently to make statements categorizing information." *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973). "In an effort to compensate" for this information asymmetry, the district court "may and often does examine the document[s] *in camera* to determine whether the Government has properly characterized the information as exempt." *Id.* at 825; *see also* 5 U.S.C. § 522(a)(4)(B).

It is within the trial court's discretion to decide whether to undertake *in camera* review. *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998). However, summary judgment

without *in camera* review is appropriate only where the government's affidavits "provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith." *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 22 (D.C. Cir. 1984).

If the Court is not persuaded by the summary judgment briefs and record that Plaintiff is entitled to summary judgment, several circumstances present in this case warrant *in camera* review.

First, CBP and ICE's conclusory declarations, ICE's *Vaughn* index, and Defendant's summary judgment briefs do not provide sufficient detail about the records at issue to determine the applicability of the claimed exemptions. *See* Part II.C, III, & IV.

Second, there is information in the record that contradicts Defendant's justifications for withholding records under Exemptions 5 and 7(E). *See* Part II & III.

Third, *in camera* review is appropriate where, as here, there is "a strong public interest in disclosure" and the purpose of the FOIA request is to "ascertain whether a particular agency is properly serving its public function." *Allen*, 636 F.2d at 1299.

These circumstances suggest that an inspection *in camera* may be a fair and appropriate way to resolve this FOIA dispute should the Court have any doubts about granting summary judgment to Plaintiff.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its cross-motion for summary judgment and deny Defendant's motion for summary judgment.

Dated: May 18, 2021                                   Respectfully Submitted,

                                                                        */s/ David L. Sobel*
                                                                        DAVID L. SOBEL
                                                                        D.C. Bar No. 360418

Electronic Frontier Foundation
5335 Wisconsin Avenue, N.W.
Suite 640
Washington, DC  20015
(202) 246-6180

SAIRA HUSSAIN (admitted in CA)
JENNIFER LYNCH (admitted in CA)
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333

*Counsel for Plaintiff*